TOMÁS CARLO DEL TORO, demandante y recurrido, *v.* HON. SECRETARIO DE JUSTICIA, demandado y peticionario.

*Número:* O-78-69     *Resuelto:* 17 de mayo de 1978

*Héctor A. Colón Cruz, Procurador General, Candita R. Orlandi, Procuradora General Auxiliar,* abogados del peticionario; *Miguel A. Montalvo,* abogado del recurrido.

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

El recurrido Carlo del Toro fue procesado ante la Sala de Mayagüez del Tribunal Superior por infracción de la Ley de Bolita (Ley Núm. 220 de 15 mayo, 1948—33 L.P.R.A. sec. 1247 y ss.) y resultó absuelto luego de ventilado el juicio en sus méritos el 9 enero, 1978. En relación con dicho caso, el Secretario de Justicia había confiscado un automóvil Ford, propiedad del acusado, valorado en $500.00 porque alegadamente se usó para transportar material de bolita, acción to-

mada por autoridad de la propia Ley Núm. 220 citada. (¹) El acusado y dueño del vehículo tenía radicada en tiempo una demanda de impugnación de confiscación, a tenor del Art. 2(a) de la Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones (34 L.P.R.A. sec. 1722(a)), la cual fue llamada para juicio ante la misma Sala de Mayagüez el 20 enero, 1978 y en dicho acto planteó el acusado su absolución como determinante, sin ulterior procedimiento, de su derecho a la restitución del vehículo. El juez de instancia acogió el planteamiento y dictó la siguiente

### "SENTENCIA

Al llamarse hoy este caso para juicio, planteó el abogado del demandante que en el juicio criminal contra el aquí demandante por los mismos hechos que motivaron la confiscación del vehículo envuelto en esta demanda, visto ante este mismo Tribunal el día 9 de este mes (caso M-77-22), el demandante fue absuelto luego de un juicio en sus méritos, y que por tal razón, debía tenerse como cosa juzgada el hecho de que el demandante no usó el vehículo para transportar ese material de bolita.

---

(¹) Art. 5 (33 L.P.R.A. sec. 1251).—*Confiscación y venta o destrucción de enseres, vehículos, etc.*

"Todos los artefactos, vehículos u otros medios de transportación, monedas y demás enseres o implementos ocupados y utilizados en relación con los juegos prohibidos de la 'bolita', 'bolipul', combinaciones clandestinas en relación con los 'pools' o bancas de los hipódromos de Puerto Rico, y loterías clandestinas, que hayan sido ocupados en relación con dichos juegos, serán confiscados por el Secretario de Justicia en favor del Estado Libre Asociado de Puerto Rico y, excepción hecha de los vehículos, bestias o embarcaciones marítimas o aéreas, vendidos por orden del tribunal correspondiente a través del alguacil del mismo en pública subasta, al mejor postor, y el importe de la venta con la suma que fuere ocupada pasará al Secretario de Hacienda de Puerto Rico para ser utilizados por los municipios de segunda y tercera clases, para distribuirse en proporción al número de habitantes respectivos. Los vehículos de motor confiscados serán puestos bajo la custodia de la oficina de Transporte. Aquellos artefactos y demás enseres que a juicio del tribunal correspondiente, no tengan otro uso que el relacionado con las infracciones a las secs. 1247 a 1257 de este título, serán destruidos.

"Para la confiscación y disposición de vehículos, bestias y embarcaciones marítimas o aéreas se seguirá el procedimiento establecido por la ley conocida como 'Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones', secs. 1721 y 1722 del Título 34."

El abogado del demandado aceptó como un hecho cierto la absolución del demandante en el juicio en sus méritos celebrado en la causa criminal, pero alegó que por exigirse un mayor grado de prueba en el juicio criminal para una convicción del acusado, la absolución del demandante no debía afectar el resultado de esta acción.

Las partes envueltas en esta acción de impugnación son las mismas partes envueltas en la acción criminal, y si en la vista criminal desfiló la prueba de ambas partes en torno a la posesión por el demandante del material delictivo que motivó su acusación y la confiscación de su vehículo, y el demandante fue absuelto, entendemos que hubo una adjudicación en sus méritos del hecho de que el demandante no usó su vehículo para transportar material de bolita, y que no se justifica volver a oír toda la prueba de estas mismas partes para resolver esta demanda. *Pueblo* v. *Angel Ortiz Marrero,* resuelto por nuestro Tribunal Supremo el 13 de septiembre de 1977.

Por lo tanto, consideramos como un hecho juzgado y establecido que el demandante no transportó material de bolita en el vehículo objeto de esta demanda el día 19 de julio de 1976, y que la confiscación de dicho vehículo fue improcedente.

———————

Por todo lo cual, se declara con lugar la demanda, decretándose la nulidad de la confiscación del vehículo objeto de esta demanda, que lo es un automóvil Ford de 1969, tablilla 12 W 044, valorado en $500.00, ordenándose la devolución al demandante de dicho vehículo.

NOTIFÍQUESE.

En Mayagüez, Puerto Rico, a 20 de enero de 1978.

(Fdo.) FRANK VIZCARRONDO VIVAS

Juez Tribunal Superior."

Al *certiorari* del Secretario de Justicia expedimos el 21 marzo último, orden para mostrar causa por la que no deba revocarse la sentencia, y ha comparecido la parte recurrida mediante escrito de oposición a la expedición del auto.

Con apreciables cambios en consistencia la jurisprudencia del Tribunal Supremo de los Estados Unidos se ha adherido

al pronunciamiento del Juez Story al resolver en el caso del barco pirata *The Palmyra*, 12 Wheat. 1, 6 L.Ed. 531 (1827), que en materia de confiscación *la cosa* es el ofensor primario, trátese de un delito *malum prohibitum* o *malum in se*, y que el procedimiento *in rem* tiene existencia independiente de, y no afectada en modo alguno por el procedimiento criminal *in personam*. La extremosa regla, (²) producto de la legítima preocupación del Estado con la práctica de la piratería y el contrabando a principios del siglo XIX, ha sido atemperada en el decurso del tiempo por el recio surgimiento y difusión de las garantías de la Quinta Enmienda de la Constitución de los Estados Unidos contra más de un juicio por el mismo delito, la autoincriminación, la falta del debido proceso y la toma de propiedad privada para uso público, sin justa compensación; (³) así como por la regla excluyente de evidencia ilegalmente obtenida. *One 1958 Plymouth Sedan* v. *Pennsylvania*, 380 U.S. 693, 696 (1965). La evolución del criterio jurídico se refleja en *United States* v. *U.S. Coin & Currency*, 401 U.S. 715 (1971) donde se dice: "Tradicionalmente, las acciones de decomiso se han proseguido sobre la ficción de que los objetos inanimados por sí pueden incurrir en conducta ilegal. . . . Simplemente la teoría ha sido que si la cosa es 'culpable', caerá en decomiso [pág. 719] . . . . Se nos ha de convencer de que una ley de confiscación de tanto alcance no levanta serias cuestiones constitucionales bajo aquella parte de la Quinta Enmienda que ordena que ninguna persona será 'privada de su propiedad sin el debido proceso de ley; ni se tomará propiedad privada para uso público, sin mediar justa compensación.' [*Ibid.* pág. 720]. . . . Cuando los estatutos de confiscación se miran en su totalidad, es manifiesta la intención de impo-

---

(²) Aun Blackstone, quien no fue crítico mordaz de la tradición jurídica inglesa, consideraba la confiscación de propiedad del *inocente* como basada en "superstición" heredada de la época ciega del feudalismo. 1 W. Blackstone, *Commentaries*, c. 8 *300.

(³) Estos derechos están declarados y protegidos en el Art. II, Secs. 11, 9 y 7 de nuestra Constitución.

ner una penalidad únicamente a aquéllos claramente impli-
cados en una empresa criminal, de lo que sigue... que en dicho
procedimiento puede propiamente invocarse el privilegio de
la Quinta Enmienda." *Ibid.* pág. 721.

En *Calero-Toledo* v. *Pearson Yacht Leasing Co.,* 416 U.S.
663, 688 (1974), a pesar de que excluye de aplicación la doc-
trina de *U.S. Coin & Currency,* supra, al distinguir hechos,
reitera el Supremo de Estados Unidos:

"No quiere esto decir, sin embargo, que el 'largo alcance'
(*broad sweep*) de los estatutos de confiscación a que alude *Coin
& Currency,* no puedan, en otras circunstancias, suscitar serias
cuestiones constitucionales. Otro tanto intimó el Juez Presidente
Marshal hace más de siglo y medio en su observación de que 'el
decomiso puede sólo aplicarse en aquellos casos en que los medios
prescritos para impedir la confiscación puedan emplearse.'
*Peisch* v. *Ware,* 4 Cranch, 347, 363 (1808). Por lo tanto queda
implícito que sería difícil rechazar el reclamo constitucional de
un dueño cuya propiedad sujeta a confiscación le ha sido quitada
sin su concurso o consentimiento. *Ibid.* pág. 364 [2 L.Ed. 643];
*Goldsmith-Grant Co.* v. *United States,* 254 U.S., pág. 512 [65
L.Ed. 376]; *United States* v. *One Ford Coupe Automobile,* 272
U.S., pág. 333 [71 L.Ed. 279, 47 A.L.R. 1025]; *Van Oster* v.
*Kansas,* 272 U.S., pág. 467 [71 L.Ed. 354, 47 A.L.R. 1044]. De
igual modo, lo mismo podrá decirse de un dueño que prueba no
sólo que él estaba desconectado y desapercibido de la actividad
delictiva, mas también que él había hecho todo cuanto razonable-
mente podía esperarse para impedir el uso prohibido de su pro-
piedad; porque en tal caso sería difícil concluir que la confisca-
ción servía a propósitos legítimos y que no era indebidamente
opresiva."

La jurisprudencia de Puerto Rico ha seguido la misma
ruta de cautelosa atenuación de severidad en la aplicación
del principio(⁴) que Blackstone llamó superstición heredada

---

(⁴) En su análisis del trasfondo histórico de la acción confiscatoria,
*Calero-Toledo* v. *Pearson Yacht Leasing Co.,* 416 U.S. 663, 683, resume el
principio así: "... [T]he innocence of the owner of property subject to
forfeiture has almost uniformly been rejected as a defense. ..." Y citando
del Juez Story (1827): "The practice has been, and so this Court under-

de "los días ciegos" del feudalismo, hacia la vindicación del derecho de la persona inocente de la actividad criminal que da lugar a la confiscación. En *Ochoteco v. Tribunal Superior*, 88 D.P.R. 517 (1963), anulamos la confiscación de un automóvil Chevrolet que confiado por su dueño a un empleado para entrega de una orden de persianas, fue usado por éste en compañía de amigos y de parranda, y en cuyo vehículo, al ser detenidos por una infracción de Ley de Tránsito ocupó la Policía dos armas de fuego. Consideramos que las "expresas instrucciones" del dueño a su empleado sobre el uso del vehículo "exclusivamente" para el fin lícito de entrega de mercancía al día siguiente, y la prohibición de que no lo usara durante la noche, tuvieron el efecto de aislar al dueño de la empresa delictuosa de un empleado al punto de conversión de la posesión original de éste en una ilegal. Allí expresamos que "una generalización así de la norma de derecho aplicable [que la acción va dirigida a la cosa *res*, por lo que los derechos de terceros inocentes, ni están envueltos, ni están protegidos] no es en todos los casos procedente. Cada caso debe verse y pesarse a la luz de sus hechos, ya que la naturaleza *in rem* de la acción no la desviste de su condición esencialmente punitiva y de infligir castigo . . . . [N]o toda entrega de la posesión de un vehículo tiene iguales motivaciones, ni idéntica justificación, ni la misma necesidad, ni similares propósitos." *Ibid*. pág. 528.

Los procedimientos instados con el propósito de confiscar la propiedad de un individuo, por razón de un delito por él cometido, aunque civil en su forma, tienen naturaleza criminal a los fines de la Quinta Enmienda. *Boyd* v. *United States*, 116 U.S. 616, 634 (1886), según citado en *U.S. Coin & Currency*, supra. Su objetivo es castigar por la comisión de una ofensa contra la ley. *One 1958 Plymouth Sedan*, supra, pág.

---

stand [*sic*] the law to be, that the proceeding *in rem* stands independent of, and wholly unaffected by any criminal proceeding *in personam*." *The Palmyra*, 12 Wheat. 1 (1827).

700. En *Pueblo* v. *González Cortés*, 95 D.P.R. 164, 168 (1967), reconocimos la naturaleza punitiva de la confiscación razón por la cual sostuvimos que "[l]as confiscaciones no son favorecidas por las cortes y los estatutos autorizándolas son interpretados restrictivamente . . . de suerte que resulten consistentes con la justicia y los dictados de la razón natural."

En el presente caso el acusado recurrido es dueño del automóvil Ford confiscado. La Sec. 5 de la Ley Núm. 220 (Escolio 1) en cuanto ordena la confiscación de vehículos utilizados en relación con el juego de la bolita opera como sanción adicional contra el infractor, que por otras secciones de la misma ley puede ser condenado a pena de reclusión o multa. De hecho la confiscación del vehículo equivale a una penalidad pecuniaria que en muchas ocasiones excede por mucho la multa fluctuante entre $350 y $1,000 dispuesta en la Sec. 4 de la Ley. ¿Resulta "consistente con la justicia y los dictados de la razón natural" que la persona absuelta en juicio quede todavía expuesta al castigo que implica la pérdida de su propiedad?

La absolución en los méritos adjudica con finalidad irrevisable el hecho central, tanto del caso criminal como el de confiscación, de que el vehículo no se utilizó para transportar mercancía ilícita. Daría lugar a una anomalía resolver bajo estas circunstancias que no habiéndose probado en el primer caso que el acusado utilizara el vehículo para transportar material relacionado con el juego, hubiese de enfrentarse todavía a la misma cuestión en la demanda de impugnación. *One Plymouth Sedan,* supra, pág. 701. La doctrina de impedimento colateral por sentencia exige la desestimación del segundo proceso, aun cuando tenga por objeto un delito distinto, si al resolverse el caso anterior se adjudicaron y determinaron hechos necesariamente decisivos para el segundo. *Pueblo* v. *Lugo,* 64 D.P.R. 554, 559–560 (1945). *Pueblo* v. *Ortiz Marrero,* 106 D.P.R. 140 (1977). No podrá disminuirse el valor y consecuencia de la sentencia absolutoria recaída so-

bre el hecho medular de ambos procedimientos—que el acusado no transportó objetos prohibidos en su automóvil—por lo que la confiscación debe anularse, toda vez que no puede ponérsele en riesgo de ser castigado dos veces por el mismo delito (Const., Art. II, Sec. 11), y la subsistencia de la confiscación vulneraría los preceptos constitucionales que excluyen la privación de propiedad sin debido proceso (Art. II, Sec. 7); o su toma sin mediar justa compensación (Art. II, Sec. 9).

En términos de vindicación de derechos del acusado y su restitución al pleno disfrute de su libertad personal, nada supera la absolución decretada en juicio en los méritos, producto de la depuración de hechos por el juzgador. En *Downs* v. *Porrata, Fiscal*, 76 D.P.R. 611, 617–619 (1954), resolvimos que un acusado convicto y sentenciado por infracción de los Arts. 7 y 29 de la Ley de Armas, a quien se le confiscó la motocicleta en la que transportaba el arma y a quien el Gobernador de Puerto Rico concedió un indulto total, pleno e incondicional, restituyéndolo al disfrute de todos los derechos civiles de los que fue privado por la referida convicción y sentencia, tenía derecho a la devolución de su vehículo. Al rechazar la defensa del fiscal demandado de que siendo el procedimiento de confiscación uno *in rem,* dirigido contra el vehículo mismo y no contra su dueño, cualquier indulto concedido al dueño no alcanza la cosa, dijimos que "[l]a algunas veces útil ficción que la culpabilidad puede recaer sobre la cosa que sirve de instrumento para la comisión de un delito, haciendo abstracción de la voluntad criminal que la dirige, no tiene un valor absoluto . . . ." *Ibid.* pág. 618. Tampoco ha de tenerlo para enervar el contenido ético y la eficacia de la absolución pronunciada en este caso. *Sánchez* v. *Tesorero de P.R.,* 72 D.P.R. 133, 136 (1951).

■ La decisión que hoy tomamos está estrictamente ceñida a la situación de derecho que se produce al concurrir circunstancias determinantes, a saber: que el acusado es dueño del vehículo confiscado; que su absolución en los méritos inevi-

tablemente comprende la adjudicación de la cuestión central de que no utilizó el vehículo para transportar material prohibido; que la sentencia absolutoria en juicio tiene un valor y trascendencia que amparan no sólo la libertad, sino también el derecho de propiedad del absuelto, y que el automóvil no es por su naturaleza instrumento de crimen y sí un bien mueble destinado al aprovechamiento por su dueño en actividades lícitas. El diseño legislativo prevaleciente en Puerto Rico dentro del cual se complementan las disposiciones confiscatorias de leyes especiales con el procedimiento ordenado en la Ley Uniforme de Confiscación (34 L.P.R.A. sec. 1721 y ss.) mantiene una distancia y una separación de campos entre la conducta del poseedor de la propiedad utilizada en la empresa criminal y el interés del dueño inocente, y una concentración en la cosa o instrumento del crimen en sí como objetivo abstracto del decomiso, indispensables para proteger la seguridad y el bienestar del pueblo contra el crimen y el fraude. La vinculación de procedimientos y la introducción del interés particular del dueño inocente en contraposición al legítimo interés de orden público al que sirve la confiscación, es rara excepción que sólo se concreta en circunstancias de extrema exigencia revestidas de irrecusable validez constitucional, aquí presentes.

*La sentencia recurrida será confirmada.*

El Juez Presidente Señor Trías Monge no intervino.