Aponte Hernández, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Vía "Escrito de Apelación" presentado el 17 de octubre de 2000, el Estado Libre Asociado de Puerto Rico (E.L.A.) nos solicita la revisión y revocación de la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, el 20 de septiembre de 2000, notificado su archivo en autos el 25 de septiembre de 2000. Mediante la misma, el Tribunal de Instancia declaró con lugar la demanda de impugnación de confiscación.
I
El 14 de enero de 2000, el señor Félix Vázquez Oliveras se encontraba manejando el vehículo de motor Ford, modelo Pick-up F-150, del año 1987, tablilla número 648-909, por la carretera número 5, frente al antiguo Cementerio Municipal de Cataño, cuando fue intervenido por las autoridades policíacas. A raíz de la aludida intervención, en el interior del referido vehículo de motor se ocupó una bolsa plástica transparente con cierre a presión la cual contenía un polvo blanco, el que luego de la correspondiente prueba de campo arrojó un *865 resultado positivo a cocaína. Por estos hechos, se sometió contra el señor Vázquez Oliveras cargos criminales por infracción al Artículo 404 de la Ley de Sustancias Controladas. Así también, mediante Orden de Confiscación fechada 17 de diciembre de 1999, se dispuso la confiscación del anteriormente descrito vehículo de motor.
A tono con la Orden de Confiscación expedida, el 27 de enero de 2000, el Fiscal Especial Mariano Rivera Rivas, de la División de Confiscaciones del Departamento de Justicia, notificó al señor Vázquez Oliveras, así como al señor Héctor L. Meléndez Negrón, titular registral del vehículo de motor, que el mismo había sido confiscado debido a su utilización para cometer el acto delictivo a que anteriormente se ha hecho referencia. En dicha comunicación se incluyó una explicación del proceso aplicable para impugnar la confiscación efectuada.
Así las cosas, el 23 de febrero de 2000, la parte apelada presentó ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, una demanda sobre impugnación de confiscación. Entre sus alegaciones, el señor Vázquez Oliveras expuso que "[e]l 1ro. de febrero se celebró la Vista Preliminary el Honorable Tribunal determinó que NO EXISTIA CAUSA PROBABLE para creer que se ha cometido un delito y que el Sr. Félix Vázquez lo cometió y el 18 de febrero el Ministerio Publico desistió de Vista Preliminar en Alzada". Amparado en lo anterior, el señor Vázquez Oliveras solicitó que se invalidara la confiscación efectuada.
Con fecha de 29 de marzo de 2000, el E.L.A. presentó su contestación a la demanda, en la cual esencialmente negó la procedencia legal de lo solicitado por el señor Vázquez Oliveras, levantando además varias defensas afirmativas. El Honorable Tribunal de Primera Instancia señaló el día 20 de septiembre de 2000 para la celebración de un "status conference". Llegada esa fecha, el señor Vázquez Oliveras sometió copia de una Resolución emitida el 18 de febrero de 2000 en el caso número VPA2000-0021, Pueblo v. Félix Vázquez Oliveras, en la cual se señala que el Ministerio Público había desistido de la vista preliminar en alzada. A base de la información suplida por el señor Vázquez Oliveras, y ante la oposición del E.L.A., el mismo día 20 de septiembre de 2000, el Honorable Tribunal de Primera Instancia dictó la sentencia objeto del presente recurso, mediante la cual se decretó la improcedencia de la confiscación efectuada.
No conforme con dicha sentencia, el E.L.A. recurre ante este Tribunal señalando el siguiente error:

"ERRO EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE BAYAMON, AL UTILIZAR EL RESULTADO FAVORABLE AL IMPUTADO EN UNA VISTA PRELIMINAR COMO UNICO CRITERIO PARA DECRETAR LA IMPROCEDENCIA DE LA CONFISCACION DE UN VEHICULO DE MOTOR RELACIONADO CON DICHA ACTIVIDAD DELICTIVA."

El 2 de mayo de 2001, el recurso fue reasignado a este Panel.
Se trata aquí de un trámite de ley especial que especifica y señala al recurso de certiorari, para revisar ante el Tribunal de Circuito de Apelaciones, conforme dispone el Art. 4.002(f) de la Ley 248 de 25 de diciembre de 1995, 4 L.P.R.A. 22K(i), 34 L.P.R.A. sec. 1723(i). De igual forma, también dispone la Regla 32(E) del Reglamento del Tribunal de Circuito de Apelaciones, vigente a partir del 1 de mayo de 1996, 4 L.P.R.A. Ap. XXII-A. El recurso debe presentarse conforme se disponía ante el Tribunal Supremo de Puerto Rico, dentro de 30 días, Cooperativa de Seguros Múltiples v. Srio., 118 D.P.R. 115, 118 (1986).
Habiéndose radicado oportunamente, acogemos el mismo como certiorari, y contando con la posición de todas las partes, pasamos a resolver.
La Ley Uniforme de Confiscaciones, Ley Num. 93 de 13 de julio de 1988, según enmendada, 34 L.P.R.A. sees. 1723 et seq., persigue el propósito primordial de "ampliar el marco de la autoridad que podrá ejercer el Pueblo de Puerto Rico para confiscar la propiedad que ha sido utilizada confines ilegales”. Exposición de *866 Motivos de la Ley Núm. 93 de 13 de julio de 1988, supra, Leyes de Puerto Rico de 1988, a la pág. 409. Se pretende que por medio de este mecanismo sean sacadas de circulación las propiedades que previamente han sido utilizadas para cometer delitos, de forma que "se detenga su uso para futuras actuaciones delictivas". Ibid. Esto, con miras a disminuir el campo de posibilidades en la utilización de equipos y artefactos que faciliten la comisión de delitos y ayudar a detener el avance de la delincuencia en nuestro país.
En armonía con los fines antes indicados, nuestra Asamblea Legislativa aprobó también la Ley Núm. 55 de 16 de agosto de 1989, mediante la cual se enmendó la Ley Uniforme de Confiscaciones de 1988, supra, a los fines de "precisar que la autoridad del Estado para confiscar, se extenderá sobre toda aquella propiedad que sea utilizada en relación con la comisión de delitos graves y de aquellos delitos menos graves en que, por ley, se autorice expresamente la confiscación". Exposición de Motivos de la Ley Núm. 55 de 16 de agosto de 1989, Leyes de Puerto Rico de 1989, a las págs. 250-251. En esa misma línea, se expresa la Exposición de Motivos de la Ley Núm. 14 de 10 de junio de 1993, Leyes de Puerto Rico de 1993, a las págs. 44-45, mediante la cual se amplía aún más el ámbito de la facultad del Estado para incautarse de propiedad utilizada con fines ilícitos por vía del establecimiento de una presunción controvertible de que el dinero en efectivo e instrumentos negociables que se encuentren en el lugar o lugares donde ocurre la incautación, son el producto de la actividad ilegal, o han sido utilizados o se han intentado utilizar para llevar a cabo el acto que da lugar a la confiscación.
Como hemos visto, la trayectoria legislativa puertorriqueña en asuntos de confiscaciones, ha mantenido un desarrollo constante hacia el establecimiento de éstas como un mecanismo eficaz para combatir el crimen. Este diseño legislativo ha sido justificado sobre la base de que la confiscación del instrumento del crimen es un medio importante para apoyar la lucha de las autoridades gubernamentales contra la actividad delictiva. Alvenre Corporation v. Hon. Secretario de Justicia, opinión de conformidad emitida por el Juez Asociado, señor Fuster Berlingeri, en Sentencia de 18 de junio de 1992, 139 D.P.R. 760 (1992).
Es decir, nuestra legislación sobre confiscación se concentra "en la cosa o instrumento del crimen en sí como objetivo abstracto del decomiso", Carlo v. Secretario de Justicia, 107 D.P.R. 356, 365 (1978), y tiene un propósito punitivo y disuasivo de incuestionable validez. Calero Toledo v. Pearson Yacht Leasing Co., 616 U.S. 663, 686-687 (1973); Austin v. United States, 61 U.S.L.W. 4811 (1993). Este tipo de estatuto previene la comisión de conducta ilícita por medio de la imposición de una penalidad económica que no solamente convierte en ilegal una actividad delictiva, sino que también la hace no lucrativa.
Tratándose de un procedimiento "in rem", el cual va contra la cosa, la mera determinación penal de inexistencia de responsabilidad criminal no derrota la validez de la confiscación. En reconocimiento a esta realidad, nuestra Asamblea Legislativa aprobó la Ley Núm. 32 de 14 de enero de 2000, la cual, en su Exposición de Motivos expresa que:
"La confiscación civil no es una acción contra el individuo, sino que es una acción in rem; esto es, va dirigida contra la cosa. Esta confiscación se basa en la ficción legal de que la cosa es la ofensora primaria. Trátase de un delito malum prohibitum o malum in se, el procedimiento in rem tiene existencia independientemente del procedimiento criminal in personam, y no queda afectado en modo alguno por éste. En consecuencia, los procedimientos de confiscación civil pueden llevarse a cabo y culminarse antes de que se acuse, se declare culpable o absuelto al acusado, o aun cuando no se haya presentado ningún cargo. A diferencia de las confiscaciones criminales, en que el Estado debe probar la conducta delictiva que dio lugar a la confiscación más allá de duda razonable, en la confiscación civil, el peso de la prueba pasa al reclamante, una vez el Estado establece que existe causa probable par confiscar." (Subrayado nuestro).
Cónsono con lo anterior, nuestro legislador enmendó el Artículo 2 de la Ley Uniforme de Confiscaciones, supra, a los efectos de que en su Apartado (c), éste expresamente dispusiera que ”[e]l resultado favorable al acusado o imputado en cualquiera de las etapas de la acción criminal no será impedimento para, ni tendrá efecto de cosa juzgada sobre, la acción civil de confiscación, aunque ésta se base en los hechos imputados en la *867 acción penal".
Obviando el claro mandato legislativo, en el presente caso, el Honorable Tribunal de Primera Instancia expresa en su sentencia que la aludida disposición estatutaria "no cubre los presentes hechos por razón de que no hay una absolución en los méritos, sino una determinación del Ministerio Fiscal de no continuar con los procedimientos y desistir de la vista preliminar en alzada". Es decir, el foro sentenciador pretende hacer una sutil distinción entre causas procesales o sustantivas para la exoneración de responsabilidad criminal, sosteniendo incorrectamente que sólo en casos de exoneración por causas sustantivas, como la absolución en los méritos, será de aplicación la enmienda contenida en la Ley Núm. 32, supra.
Tal determinación se aparta del claro lenguaje del estatuto, el cual no establece distinción alguna entre la causa de la exoneración de responsabilidad en la esfera criminal para disponer que ésta no tendrá efecto de cosa juzgada sobre la acción civil de confiscación, ni será impedimento para que el trámite en la misma siga su curso normal. Según se expresa nuestro legislador en la antes citada Exposición de Motivos de la Ley Núm 32, supra, ”[c]onsideramos que el resultado de la acción penal no debe ser impedimento, ni tener efecto de cosa juzgada, sobre la acción civil de confiscación". En el desempeño normal de sus funciones, los tribunales están obligados a respetar la voluntad legislativa, aunque los magistrados discrepen personalmente de la sabiduría de los actos legislativos. Bemier & Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, 2da. Ed., Publicaciones J.T.S., Inc. 1987, a la pág. 299. El intérprete judicial debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable. Rodríguez Díaz v. Autoridad de Teléfonos de Puerto Rico, opinión de 29 de mayo de 1998, 145 D.P.R._(1998), 98 J.T.S. 64.
En el caso que motiva este recurso, el foro sentenciador interpretó incorrectamente la letra de la Ley Núm. 32, supra, lo cual ha viabilizado que el apelado prevalezca en su acción de impugnación de confiscación sin descargar adecuadamente el peso de demostrar la improcedencia de la misma. Como hemos visto, la exoneración de responsabilidad criminal en la fase penal, no tiene el efecto de cosa juzgada en la acción civil de impugnación de confiscación. Por expresa voluntad legislativa, en casos como el presente, corresponde al promovente de la impugnación demostrar en el juicio civil la ausencia de vínculo entre la propiedad confiscada y la actividad delictiva.
III
Por los fundamentos antes expuestos, se expide el auto y se revoca la sentencia recurrida. Una vez la presente advenga final y firme, se devolverá el mandato a Instancia para continuación del trámite y vista en los méritos.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General