# 2002 DTA 97

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL IV DE AGUADILLA-MAYAGÜEZ
## PANEL I

ROBERTO RAMOS FLORES, MIRTA RODRÍGUEZ PIÑEIRO
Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Demandantes-Apelados

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO, HON. JOSE A. FUENTES AGOSTINI, SECRETARIO DE JUSTICIA, HON. DANIEL PAGAN ROSA, SECRETARIO DEL DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES
Demandados-Apelantes

--------------------------------------

RELIABLE FINANCIAL SERVICES, UNIVERSAL INSURANCE COMPANY
Demandantes-Apelados

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO Y SECRETARIA DE JUSTICIA
Demandados-Apelantes

Núm. KLAN-01-01212

San Juan, Puerto Rico, a 15 de mayo de 2002

Panel integrado por su Presidenta, la Juez López Vilanova,
el Juez Córdova Arone y la Juez Feliciano Acevedo

López Vilanova, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Procurador General recurre de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Mayagüez, que declaró Ha Lugar una Moción de Sentencia Sumaria presentada por los apelados Reliable Financial Services y Universal Insurance.

El Tribunal resolvió que, toda vez que el Estado no sometió un caso penal y optó por la vía administrativa, procede se devuelva el vehículo objeto de confiscación o el importe de su tasación. A juicio del Tribunal, para que proceda la confiscación, debe imputarse un delito y no otra conducta.

Con el beneficio de la comparecencia de las partes, resolvemos. A los fines de una mejor comprensión de nuestra razón de decidir, debemos exponer el tracto del caso conforme surge de todos los documentos ante nos.

**I**

El 12 de junio de 1999, dos agentes del Cuerpo de Vigilantes de la Unidad Marítima del Departamento de Recursos Naturales y Ambientales se encontraban investigando una querella relacionada con la Pescadería Soltero ubicada en Cabo Rojo. Cuando llegaron al lugar, el Sargento Padilla observó un vehículo Mazda Pick-Up, que poseía en la parte trazera, la cual es abierta, 57 especies de langostas *"cuya estimación visual no daban la medida permitida por reglamento"*. El dueño del vehículo, el aquí apelado Roberto Ramos Flores, le indicó al funcionario que el Administrador de la Pescadería Soltero, Dimas Seda, se las había vendido y le mostró un recibo. Los vigilantes se encautaron de las langostas y el vehículo.

Entregaron las langostas al Biólogo Miguel Figuerola del Laboratorio de Investigaciones Pesqueras en Cabo Rojo, quien determinó que todas las 26 langostas que le entregaron *"no tenían el tamaño mínimo requerido de 3.5 pulgadas (89 mm) largo carapacho"* (Pág 11 del Apéndice I).
Los agentes consignaron bajo juramento los hechos que dieron motivo a la intervención *"con el propósito de que el vehículo intervenido sea confiscado por el Estado Libre Asociado"* (Páginas 12 y 13 del Apéndice I.

El Secretario de Recursos Naturales emitió Orden de Confiscación el 22 de junio de 1999. La orden reza íntegramente como sigue:

*"DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES*

*INTERVENCIONES NUMS: TT-12030- 99 TT-12-031-99*

*v.*

*ROBERTO RAMOS FLORES DIMAS SEDA QUIÑONES*

*SOBRE: VIOLACON AL REGLAMENTO PARA LA PESCA DE LANGOSTA*

## ORDEN DE CONFISCACION

*El Secretario del Departamento de Recursos Naturales y ambientales del Estado Libre Asociado de Puerto Rico, en virtud de la facultad que le ha sido conferida por la Ley Núm. 1 de 29 de junio de 1977, según enmendada, ordena al Cuerpo de Vigilantes que proceda a confiscar: el vehículo marca MAZDA, Modelo Pick-Up, color Roja, Tablilla 596-338; porque de acuerdo a la prueba presentada por medio de declaración jurada y firmada por testigos, el día 17 de junio de 1999, mediante investigación de querella número Q-12-055-99, ésta en contra de la Pescadería Soltero, ubicada en la Carr. 308 en Pto. Real de Cabo Rojo, se intervino con el Sr. Roberto Ramos Flores, quien a plena vista en un envase plástico tenía especies de langosta. El hecho descrito constituye una violación al Artículo 2.02-I del Reglamento para la Pesca de Langosta, del 11 de julio de 1984. El vehículo antes descrito deberá ser puesto bajo la custodia de la Junta de Confiscaciones del Estado Libre Asociado de Puerto Rico, sita en la Carretera 189, Km 5.8, Barrio Rincón, Gurabo, Puerto Rico, a los fines de su tasación y trámites de rigor. Deberá notificarse al interesado y/o persona que tenga el vehículo antes mencionado bajo su dominio de la confiscación y tasación del mismo en el transcurso de los próximos quince (15) días, desde su ocupación, de acuerdo a las disposiciones de la Ley Núm. 93 del 13 de julio de 1988, según enmendada."*

(Véase pág. 14, Anejo II)

El 30 de junio de 1999, el Secretario de Justicia le notificó al aquí apelado Ramón Flores sobre esta confiscación y le advirtió del derecho a impugnar la misma dentro del término de quince (15) días que provee la ley.

(Véase pág. 19 Anejo IV)

El 13 de julio de 1999, los aquí apelados Roberto Ramos y su esposa presentaron una demanda sobre impugnación de confiscación en el Tribunal recurrido. En la misma, en esencia, alegaron que la ocupación del vehículo por parte de los agentes del Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales se hizo de forma ilegal y en contravención a la 4ta. Enmienda de la Constitución Federal que prohíbe los allanamientos irrazonables por parte del Estado. Asimismo, adujeron que no se cometió por parte de los demandantes la violación de ley imputada al Reglamento de Control de la Pesca de la Langosta, en la cual se basó la ocupación del vehículo. Basado en ello, sostuvieron que la confiscación del vehículo y retención del mismo es una ilegal, por lo que procede su devolución. Véase Anejo VIII, págs. 38-43 del Apéndice.

Dos días más tarde presentaron demanda las compañías de seguros aquí apeladas y ambas demandas fueron consolidadas.

Las compañías aseguradoras solicitaron que se resolviera el caso sumariamente. Fundaron su razón de pedir en que, *"a la fecha del 15 de noviembre de 1999, no se [había] radicado acusación alguna a las personas que motivaron la confiscación"* (página 84 del Apéndice).

El Tribunal concedió quince (15) días al Estado para comparecer. El 21 de diciembre de 1999, compareció

el Secretario de Justicia mediante *"Moción en Cumplimiento de Orden"*. En la misma hizo constar, entre otros lo siguiente:

*"4. Que este caso consiste en la intervención con los Sres. Dimas Seda Quiñones y Roberto Ramos Flores debido a una alegada violación al Reglamento de la Pesca de Langosta. Esta violación consistió en que el Sr. Ramos transportaba en el vehículo confiscado unas 57 especies de langostas de las cuales 26 no cumplían con los requisitos en cuanto a medidas del carapacho dispuestos en el Reglamento antes aludido. Una vez se interviene con esta persona, el mismo indica que compró las especies al Sr. Seda.*

*5. Que siendo así, el Vigilante Luis Vargas Torres procede a ocupar el vehículo del cual trata esta acción. Luego de esto procede a hacer un informe que somete a la División Legal del Departamento de Recursos Naturales. Es en esta División que el caso es recibido por el Licenciado Tous, el cual hace un estudio del mismo para verificar que efectivamente se cumplen con los requerimientos del Departamento de Recursos Naturales para proceder con la radicación de una querella contra los señores Dimas Seda y Roberto Ramos.*

*6. Que para efectos de la radicación de la querella y posterior celebración de vista administrativa, el caso ha sido asignado al Licenciado Nieves, quien procederá con la radicación de la correspondiente querella el próximo jueves, 23 de diciembre de 1999.*

*7. Que siendo así, el caso que nos ocupa depende de los resultados del procedimiento administrativo que contra los señores Seda y Ramos se sigue. Es, por lo tanto, necesario esperar los resultados de dicho procedimiento para poder disponer del que nos ocupa".*

(Pág. 89 del Apéndice)

Así las cosas, el 18 de enero de 2000, se presentó la querella contra Dimas Seda y Roberto Ramos por violaciones al Reglamento 4087 de Control de Pesca de Langosta. La vista se celebró el 4 de mayo de 2000. El aquí apelado Roberto Ramos no compareció y se le anotó la rebeldía. La vista, en rebeldía se celebró el 30 de junio de 2000. El apelado compareció acompañado de abogado. Finalizada la vista el abogado del apelado Ramos Flores solicitó 45 días para someter un memorando, el cual nunca sometió (Anejo VII, pág. 30)

El **Secretario de Recursos Naturales emitió Resolución condenándole al pago de multa**. En la misma se recoge lo siguiente:

### *"DETERMINACION DE HECHOS"*

*"1. El co-querellado Roberto Ramos Flores, el día 12 de junio de 1999, fue intervenido por miembros del Cuerpo de Vigilantes, Por cuanto el co-querellado Dimas Seda Quiñones, le vendió al co-querellado Roberto Ramos Flores, cincuenta y siete (57) langostas (Planulirus Aarhus), de los cuales veintiséis (26) no alcanzaban la medida mínima permitida por reglamento de tres punto cinco (3.5") pulgadas u ochenta y nueve (89 mm) milímetros.*

*2. Al momento de la intervención con el co-querellado Roberto Ramos Flores, tenía las langostas en su posesión en un envase plástico, colocado en la parte trasera de un vehículo Mazda, modelo "pick up", color rojo, tablilla número 596-338.*

### *CONCLUSIONES DE DERECHO*

*1. Los hechos probados en contra el co-querellado Roberto Ramos Flores, constituyen una violación a la Sección 1.10 (1) (2) y 2.02 (B) del Reglamento número 4087, del 10 de enero de 1990, mejor conocido como el Reglamento de Control de la Pesca de Langostas.*

*2. La Secc. 1.10 (1) (2) del Reglamento Núm. 4087, establece que será ilegal que cualquier persona: (1) posea, tenga custodia o control del embargue marítimo, el ofrecimiento de venta, la venta, la compra, la impostación, el desembarco o la exportación de cualquier langosta capturada o retenida en violación de: (2) este capítulo.*

*3. La Secc. 2.02 (B) del Reglamento Núm. 4087 dispone: "(B) Las langostas con un largo de carapacho menor que el mínimo de tres punto cinco (3.5") pulgadas, podrán ser utilizadas como atrayentes en las mismas nasas o cajones en que fueron capturadas, pero no podrán ser retenidas a bordo de . la. embarcación o desembarcadas.*

### ORDEN

*1. El co-querellado Roberto Ramos Flores, habrá de pagar una multa administrativa por la cantidad de cinco mil $5,000.00) dólares por cada una de las violaciones de ley, para un total de diez mil ($10,000.00) dólares, en un término no mayor de treinta (30) días calendario contados a partir de la distribución por correo de copia de esta resolución.*

*2. El co-querellado Roberto Ramos Flores, realizará el pago de los diez mil ($10,000.00) dólares, en un término no mayor de treinta (30) días calendario contados a partir de la distribución por correo de copia de esta resolución.*

*3. El pago de la multa administrativa deberá realizarlo mediante un giro postal o bancario a favor del Secretario de Hacienda, en cualquiera de nuestras Oficinas de Recaudaciones del Departamento de Recursos Naturales y Ambientales.*

*4. Una vez realizado el pago, deberá enviar copia del recibo oficial del pago del Recaudador, que evidencie el pago de la "multa administrativa".* Enfasis nuestro. (Véase páginas 32, 33 y 34 del Apéndice).

En la Resolución emitida se advirtió al apelado de su derecho a acudir en revisión.

El 21 de diciembre de 2000, el Secretario de Justicia sometió al foro recurrido una moción con la cual acompañó copia de la Resolución antes transcrita. Hizo constar que los hechos allí alegados dieron *"base a la confiscación que por medio del caso de epígrafe se impugna"*. (Anejo XXVIII, pág. 81)

El 4 de octubre de 2001, notificada el 6 de noviembre de 2001, se dictó la sentencia que aquí se recurre. Dicho foro determinó que bajo el estado de derecho existente con anterioridad a la enmienda efectuada a la Ley Uniforme de Confiscaciones mediante la Ley Núm. 32 del 14 de enero de 2000, el cual era el vigente a la fecha de los hechos del caso de autos, la confiscación se entendía como un proceso cuasi criminal en el sentido de que la misma fungía como pena adicional, por lo que su existencia dependía de la comisión de un delito y no de otra clase de conducta. Basado en ello, concluyó que no habiéndose sometido caso penal alguno contra los Sres. Roberto Ramos Flores y Dimas Seda Quiñones, no existía fundamento para sostener la sanción de la confiscación. Es de ese dictamen que se recurre ante nos.

Examinemos el derecho en controversia.

## II

La Ley Uniforme de Confiscaciones de 1988, Ley Núm. 93 de 13 de julio de 1988, según enmendada, 34 L. P.R.A. SEC. 1723 *et. seq.*, autoriza la confiscación a favor del Estado Libre Asociado de Puerto Rico de toda propiedad que sea utilizada en relación a la comisión de los delitos enumerados en dicho estatuto, que incluyen los delitos graves y menos graves tipificados en el Código Penal de Puerto Rico, en las leyes de sustancias controladas, de armas ilegales y explosivos; en las de juegos prohibidos, leyes fiscales, leyes de vehículos y

tránsito, de embarcaciones, leyes contra el crimen organizado, así como en cualquier otra que lo autorice. 34 L. P.R.A. SEC. 1723.

Reiteradamente, nuestro Tribunal Supremo ha establecido que el procedimiento de confiscación civil contemplado en la Ley Uniforme de Confiscaciones de 1988 es de carácter *in rem*; es decir, va dirigido contra la cosa misma y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con algún interés legal sobre ésta. La confiscación se basa en la ficción jurídica de que la cosa misma es la ofensora primaria. Por ello, el procedimiento de confiscación constituye una **acción independiente del procedimiento criminal** que el Estado pueda incoar basado en los mismos hechos. *Del Toro Lugo v. E.L.A.*, 136 D.P.R. 973 (1994) y *Carlo v. Srio. De Justicia*, 107 D.P.R. 356 (1978), citando en ambos a *United States v. U:S: Coin & Currency*, 401 U.S. 715 (1971) y *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974). Por ello, los procedimientos de confiscación civil pueden llevarse a cabo y culminarse antes de que se acuse, se declare culpable o absuelto al acusado o, **aun cuando no se haya presentado ningún cargo criminal.**

El derecho del Estado de tomar posesión de la cosa surge de su utilización en la comisión de un delito. *Del Toro Lugo, supra.* A tal derecho, además de cumplir con un objetivo punitivo, se le reconoce un propósito social de carácter preventivo en cuanto a la futura utilización de la propiedad con fines delictivos. *Del Toro Lugo, supra,* citando a *United States v. One Assortment of 89 Firearms*, 465 U.S. 354 (1984), Véase además, Exposición de Motivos de la Ley Núm. 93, *supra,* Leyes de Puerto Rico, pág. 409.

Los elementos pertinentes a la determinación de si procede una confiscación civil son: si existe prueba suficiente y preponderante de que se haya cometido un delito, y que exista un nexo entre la comisión del delito y la propiedad confiscada.

En el caso ante nos, el foro recurrido concluyó que bajo el estado de derecho vigente a la fecha de los hechos de este caso, es decir, antes de que entrara en vigor la Ley número 32 de 14 de enero de 2000 que enmendó la ley 93 aquí en controversia, el procedimiento de confiscación se entendía como uno cuasi criminal por lo que su existencia dependía de la culminación de un exitoso proceso penal. Apoyó tal conclusión en los casos de *Del Toro Lugo v. E.L.A., supra,* y de *Carlo v. Srio. De Justicia, supra*. Diferimos de esta interpretación.

Tanto en los casos de *Carlo* como en *Del Toro Lugo*, el Tribunal Supremo reitera el carácter civil o *in rem* de la acción de confiscación estatuída en la Ley Uniforme de Confiscaciones de 1988 y su naturaleza independiente de la acción penal que se pueda incoar por los mismos hechos que dieron base a la misma. No obstante, en ambos casos, el Tribunal Supremo, basado en la figura de cosa juzgada en su modalidad de impedimento colateral por sentencia, resolvió a favor de la impugnación de la confiscación debido al **resultado favorable al imputado** en la acción penal por los hechos que dieron lugar a la confiscación. En *Carlo* se trataba de la absolución en los méritos del acusado; en *Del Toro Lugo* se trataba de la determinación de no causa para acusar en vista preliminar. Pero **en ninguno de los dos casos, el Tribunal Supremo varió el carácter civil de la acción de confiscación.** Tampoco sujetó su procedencia a la radicación por parte del Estado de cargos criminales por los mismos hechos que la motivaron. Tan sólo, repetimos, interpretó el alcance de la figura de cosa juzgada en su modalidad de impedimento colateral por sentencia en aquellos casos de confiscación en que el dueño de la propiedad confiscada hubiese resultado absuelto de los cargos criminales imputados a éste o favorecido en la acción penal incoada por el Estado por los mismos hechos que dieron base a la confiscación. En el caso de autos, al no haberse iniciado proceso penal alguno, no entra en juego la doctrina de impedimento colateral por sentencia.

El alcance de los casos de referencia, según delimitado, queda corroborado por la enmienda que efectuara la Asamblea Legislativa a la Ley Uniforme de Confiscaciones de 1988, a través de la Ley Núm. 32 del 14 de enero de 2000, para disponer expresamente que: *"El resultado favorable al acusado o imputado en cualquiera*

*de las etapas de la acción criminal no será impedimento para, ni tendrá efecto de cosa juzgada sobre, la acción civil de confiscación, aunque ésta se base en los hechos imputados en la acción penal*". (Sección 1 (c) de la Ley Núm. 32 de 14 de enero de 2000, enmendando el Artículo 2 de la Ley Núm. 93 de 13 de julio de 1988, Ley Uniforme de Confiscaciones.) Precisamente, ello obedeció a que, aun cuando la doctrina jurisprudencial sobre la materia es clara, en nuestra jurisdicción se creó una confusión generada por la interpretación de la referida jurisprudencia. Véase Exposición de Motivos de la Ley Núm. 32 de 14 de enero de 2000.

El estado de derecho vigente a la fecha de los hechos del caso de autos, no exigía la radicación de cargos criminales por los mismos hechos que dieron base a la confiscación para sostener la procedencia de dicho procedimiento civil. La doctrina jurídica vigente, tanto antes, cómo después de la enmienda efectuada a la Ley Uniforme de Confiscaciones a través de la Ley Núm. 32 del 2000, claramente establece que la confiscación constituye una acción independiente de la acción penal que pudiese resultar de los mismos hechos delictivos en que se basó la misma.

El procedimiento de confiscación **no va dirigido** como los estatutos penales, contra el autor o autores del delito, sino contra el objeto utilizado en la comisión del delito. Su propósito no es únicamente castigar al dueño o la persona que cometió el delito, sino que también tiene el propósito de prevenir que la propiedad pueda ser utilizada nuevamente para cometer otras fechorías. Por tanto, los elementos pertinentes para la procedencia de la confiscación son: la existencia de prueba suficiente y preponderante de que se haya cometido el delito, y de un nexo entre la comisión del delito y la propiedad confiscada. *Alejandro Rivera v. E.L.A.*, 140 D.P.R. 538 (1996); *Del Toro Lugo v. E.L.A., supra*; *Carlo v. Srio. de Justicia*, supra; *E.L.A. v. Tribunal Superior*, 94 D.P.R. 717 (1967).

En el caso que nos ocupa, según se desprende de los documentos del expediente administrativo que acompañan el recurso █ la confiscación estuvo motivada por la intervención que efectuaran el Vigilante Luis Vargas Torres y el Sargento Saúl Padilla Pérez, ambos del Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales, adscritos a la Unidad Marítima del destacamento de Boquerón.

Conforme se desprende de los informes y declaraciones juradas rendidas por éstos, el 12 de junio de 1999, y mientras se encontraban investigando una querella instada contra la Pescadería Soltero, ubicada en la Carr. 308, Barrio Puerto Real de Cabo Rojo, intervinieron con el Sr. Roberto Ramos Flores, al observar que en la parte posterior del vehículo marca Mazda, modelo Pick-Up B-300, año 1998, color rojo, tablilla 596-338, transportaba un envase plástico que contenía especímenes de langosta, que a simple vista no tenían la medida mínima exigida por ley para su pesca. Luego de ser inspeccionadas, contadas y medidas en presencia del intervenido, se comprobó que de un total de 57 especímenes, 26 de éstas no cumplían con la medida establecida por el Reglamento Núm. 4087 de 35 pulgadas (89mm) de largo de carapacho establecidos para su pesca. Al ser intervenido, el señor Ramos Flores admitió que compró las langostas al Sr. Dimas Seda Quiñones, propietario y administrador de la Pescadería Soltero, y como evidencia, proveyó el recibo de compra de las langostas. Los agentes del cuerpo de vigilantes tomaron fotos del vehículo y de su carga. Los 26 especímenes de langostas fueron retenidos y entregados al Laboratorio de Investigaciones Pesqueras localizado en Cabo Rojo, el cual certificó que las langostas no tenían el tamaño mínimo de 3.5 pulgadas (89mm) de largo de carapacho exigido para su pesca por el Reglamento Núm. 4087. Véase Anejo 1, págs, 1.13.

Basado en tales hechos, los cuales, conforme determinó el Tribunal de Instancia en la sentencia apelada, configuran la comisión de un delito menos grave por violación a la reglamentación promulgada por el Departamento de Recursos Naturales y Ambientales, en específico, a las secs. 10.1 (1) (1) (2) y 2.02 (B) del Reglamento de Control de Pesca de la Langosta, █ Reglamento Núm. 4087 de 10 de enero de 1990, el Secretario del Departamento de Recursos Naturales y Ambientales conforme a las facultades que le confiere la Ley de vigilantes del Departamento de Recursos Naturales y Ambientales, 12 L.P.R.A. sec. (2)(J), expidió el 22 de junio de 1999 una orden de confiscación del vehículo propiedad de la esposa del señor Ramos Flores. Ello al

quedar evidenciado que dicho vehículo de motor fue utilizado para la transportación terrestre de langostas que no cumplían con el límite del tamaño requerido por ley para su pesca. Dicha orden fue diligenciada el 24 de junio de 1999, por agentes del Cuerpo de Vigilantes del Departamento de Recursos Naturales y Ambientales, conforme a las facultades conferidas a dicha división por su Ley Orgánica, Ley Núm. 1 de 29 de junio de 1977, 12 L.P.R.A. sec. 1201 *et seq*.

Posteriormente, por los mismos hechos se presentó querella contra los señores Seda Quiñones y Ramos Flores imputándole las referidas infracciones al Reglamento Núm. 4087. En dicho proceso administrativo, en el cual la agencia presentó la prueba testifical y documental antes reseñada, la versión de lo ocurrido no fue contradicha por los imputados, quienes tampoco nunca cuestionaron la utilización del vehículo de motor confiscado en la comisión de las violaciones delictivas imputadas. Por el contrario, el señor Seda Quiñones, a través de un acuerdo de estipulación, admitió la infracción incurrida, por lo que se le impuso una multa administrativa de $1,500.00 mediante resolución interlocutoria de 19 de mayo de 2000. Véase Anejo VI, págs. 26, 29 del Apéndice. Al señor Ramos Flores, tras vista en rebeldía, en la cual se limitó a solicitar término para presentar memorando en derecho, el cual nunca presentó, se le impuso una multa administrativa de $5,000.00 por cada infracción de Reglamento Núm. 4087, para un total de $10,000.00, mediante resolución emitida el 4 de diciembre de 2000 y notificada el 7 de diciembre de 2000. (Anejo VII, págs. 30-36 del Apéndice del Recurso).

La evidencia que obra en el récord administrativo es más que suficiente para establecer de manera preponderante la comisión de violaciones al Reglamento Núm. 4087 del Departamento de Recursos Naturales y Ambientales, catalogadas como **delitos menos graves por la Ley Orgánica del Departamento de Recursos Naturales y Ambientales**, 3 L.P.R.A.. sec. 158. La misma establece que el vehículo confiscado fue utilizado en la comisión de tales delitos.

Erró el foro recurrido al desestimar sumariamente la demanda presentada por el Estado Libre Asociado. En consecuencia, se revoca la Sentencia apelada.

Notifíquese.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2002 DTA 97

**1.** La Fiscal de la División de Confiscaciones a cargo del caso sometió en sus mociones, como anejos, los siguientes documentos del expediente administrativo:

*"(1) Querella y su notificación; (2) Resolución interlocutoria del 19 de mayo de 2000 dictada contra el Sr. Dimas Seda Quiñones; (3) notificación del Oficial Examinador de 6 septiembre de 2000; (4) Informe del Oficial Examinador y Resolución de 4 de diciembre de 2000 dictada contra el Sr. Roberto Ramos Flores."*

**2.** El Reglamento de Control de Pesca de la Langosta, Reglamento Núm. 4087 del 10 de enero de 1990, fue aprobado con el propósito de promulgar reglamentación compatible con la reglamentación federal bajo el Plan para la Administración de la Pesquería de Puerto Rico, de Islas Vírgenes de los Estados Unidos, desarrollado por el Consejo de Administración Pesquera del Caribe, al amparo de la Ley Magnuson para la Administración y Conservación de las Pesquerías 16 U.S.C. Sec. 1801 *et seq.* (Sección 1.03 del Reglamento Núm. 4087.)