EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Luis B. Santini Casiano Peticionario v. Estado Libre Asociado de Puerto Rico, Superintendente de la Policía de Puerto Rico, Secretario Recurridos | Certiorari 2017 TSPR 196 198 DPR ____ |
|---|---|

Número del Caso: CC-2015-941

Fecha: 4 de diciembre de 2017

Región Judicial de Aibonito

Abogado de la parte Peticionaria:

Lcdo. José A. de la Texeira Barnes

Oficina de la Procuradora General

Lcda. Margarita Mercado Echegaray
Procuradora General

Lcda. Carmen A. Riera Cintrón
Procuradora General Auxiliar

Materia: Sentencia con Opinión Disidente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Luis B. Santini Casiano | | |
|---|---|---|
| Peticionario | | |
| v. | CC-2015-941 | |
| Estado Libre Asociado de Puerto Rico, Superintendente de la Policía de Puerto Rico, Secretario | | |
| Recurridos | | |

SENTENCIA

En San Juan, Puerto Rico, a 4 de diciembre de 2017.

Nos corresponde determinar si el Tribunal de Apelaciones erró al revocar un dictamen del foro primario, en el cual se declaró ha lugar una demanda de impugnación de confiscación, tras una determinación de no causa probable para acusar en la acción penal por el delito que originó la confiscación. Por los fundamentos que expondremos a continuación, revocamos el dictamen recurrido y restablecemos la determinación del Tribunal de Primera Instancia.

Con ello en mente, procedemos a exponer el marco fáctico y procesal que suscitó la controversia de epígrafe.

# I

El presente caso surge a raíz de la confiscación de un vehículo de motor marca Toyota, modelo Corolla, año 2003, tablilla ESY-837, registrado a nombre del Sr. Luis B. Santini Casiano (señor Santini Casiano o peticionario). La referida confiscación tuvo lugar tras alegadas infracciones al Artículo 404 de la *Ley de sustancias controladas de Puerto Rico*, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA sec. 2404, y a la *Ley para la protección de la propiedad vehicular*, Ley Núm. 8 de 5 de agosto de 1987, según enmendada, 9 LPRA sec. 3201 *et seq.* Posteriormente, el Ministerio Público presentó cargos criminales en contra del señor Santini Casiano por los mismos hechos que motivaron la confiscación. Celebrada la correspondiente vista preliminar, el Tribunal de Primera Instancia dictaminó que no existía causa probable para acusarlo. El Ministerio Público no solicitó vista preliminar en alzada.

Ante ello, el 22 de octubre de 2013, el peticionario presentó una acción de impugnación de confiscación en contra del Estado Libre Asociado de Puerto Rico (Estado). Esencialmente, arguyó que el vehículo de motor confiscado no fue utilizado para la infracción de ley alguna. De otra parte, el Estado alegó que la confiscación se efectuó de conformidad con la *Ley uniforme de confiscaciones de 2011*, Ley Núm. 119-2011, según enmendada, 34 LPRA sec. 1724 *et seq.* Asimismo, adujo que la confiscación se presumía

correcta, por lo cual el peticionario tenía el peso de la prueba para derrotar la presunción de legalidad y corrección.

Luego de varios incidentes procesales, el 30 de junio de 2014, el señor Santini Casiano presentó una moción mediante la cual sostuvo que procedía declarar con lugar la demanda de impugnación de confiscación incoada por existir impedimento colateral por sentencia. Destacó que el resultado favorable obtenido en la acción penal exigía que se declarara ilegal la confiscación y se ordenara al Estado el pago del precio de tasación del vehículo incautado ($ 4,000), más el interés legal desde la fecha de la ocupación.

En oposición, el Estado alegó que la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia no era aplicable al caso de epígrafe. En ese sentido, arguyó que la confiscación es un procedimiento de naturaleza civil *in rem* que se dirige contra el bien confiscado y es independiente de cualquier otra acción. De igual modo, adujo que el peticionario no rebatió la presunción de legalidad y corrección de la confiscación. Además, informó que el vehículo confiscado había sido subastado.

Examinadas las posturas de las partes, el 12 de diciembre de 2014, el foro primario declaró con lugar la demanda de impugnación de confiscación presentada por el señor Santini Casiano. Dictaminó que, ante la

determinación de no causa probable para acusar y la ausencia de documentación pertinente que demostrara que existía controversia sobre el hecho de la comisión del delito, resultaba incontrovertible que el vehículo confiscado no se utilizó con relación a la comisión de un delito grave para efectos de la presente acción de impugnación. En consecuencia, le ordenó al Estado que le pagara al peticionario el valor tasado del vehículo ($4,000) o la cantidad por la cual se subastó, lo que resultara mayor, con intereses al .50% contados desde la ocupación.

Inconforme, el Estado recurrió al Tribunal de Apelaciones mediante un recurso de apelación. En esencia, alegó que el Tribunal de Primera Instancia erró en su razonamiento de que el Estado tenía que demostrar la existencia de controversia sobre el hecho de la comisión del delito que originó la confiscación. De igual forma, adujo que el resultado de la acción penal no es determinante para efectos de la legalidad de la confiscación, por lo cual no es suficiente para rebatir la presunción de legalidad y corrección de la confiscación. Por su parte, el señor Santini Casiano arguyó que rebatió tal presunción, toda vez que estableció ante el foro primario que el vehículo confiscado no fue utilizado en la comisión de un delito. Destacó que presentó como prueba la denuncia y la Resolución mediante la cual se declaró no causa en la vista preliminar.

Así las cosas, el 9 de junio de 2015, el Tribunal de Apelaciones dictó una Sentencia mediante la cual revocó la determinación del foro primario. Concluyó que "el hecho de que el poseedor del bien confiscado resulte absuelto o no implicado en los cargos imputados, no es en sí suficiente para aplicar automáticamente el impedimento colateral y declarar inválida la confiscación". Sentencia del Tribunal de Apelaciones de 9 de junio de 2015, Apéndice del *certiorari*, pág. 93. A base de ello, devolvió el caso al Tribunal de Primera Instancia para que el señor Santini Casiano estuviera en posición de rebatir la presunción de legalidad de la confiscación y presentara prueba a tales efectos.

En desacuerdo con el dictamen emitido por el foro apelativo intermedio, el peticionario compareció ante este Tribunal mediante una petición de *certiorari*. En síntesis, sostiene que el Tribunal de Apelaciones erró en su interpretación de la nueva Ley de confiscaciones con relación al alcance de la independencia entre la acción confiscatoria y el procedimiento penal. Por su parte, el Estado reitera sus argumentos en cuanto a la independencia entre el proceso civil de confiscación y la acción penal. Asimismo, insiste en que la confiscación se presume legal y correcta y, por tanto, correspondía al peticionario rebatir tal presunción con prueba distinta al resultado del procedimiento criminal instado en su contra.

El 26 de febrero de 2016, expedimos el recurso ante nuestra consideración. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver conforme a derecho.

## II

Reiteradamente, este Tribunal ha definido la confiscación como el acto mediante el cual el Estado, por mandato de la Asamblea Legislativa y actuación del Poder Ejecutivo, ocupa e inviste para sí todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en la comisión de determinados delitos. Doble Seis Sport v. Depto. Hacienda, 190 DPR 763, 784 (2014); Díaz Ramos v. ELA, 174 DPR 194, 202 (2008); Del Toro Lugo v. ELA, 136 DPR 973, 980-981 (1994). En ese sentido, el Estado tiene la facultad de privar a un individuo de su propiedad sin compensación mediante una confiscación. No obstante, ello estará sujeto al cumplimiento con las garantías mínimas del debido proceso de ley que exigen que se le brinde la oportunidad de ser notificado y oído. Pueblo v. González Cortés, 95 DPR 164, 167-168 (1967). Por tanto, una confiscación realizada conforme a derecho constituye una excepción al mandato constitucional que impide tomar propiedad privada para fines públicos sin justa compensación. Coop. Seg. Múlt. v. ELA, 180 DPR 655, 662-663 (2011). Véase Art. II, Sec. 9, Const. ELA, T. 1, ed. 2016, pág. 333.

**A.**

Es menester resaltar que en nuestra jurisdicción se ha estatuido la autoridad del Estado de apropiarse de aquellos bienes utilizados para fines ilícitos tanto como parte del proceso penal que se lleva a cabo en contra del propietario o poseedor de éstos, así como a través de una acción civil en contra de la cosa u objeto mismo. A esos efectos, en nuestro ordenamiento jurídico el proceso de confiscación se puede instituir en dos modalidades, a saber: confiscación criminal y confiscación civil.

Conscientes de las distinciones entre estas modalidades, hemos precisado que la confiscación criminal se realiza como parte integral de la acción *in personam* en contra del alegado autor del delito en un caso criminal. Coop. Seg. Múlt. v. ELA, *supra*, pág. 664; Del Toro Lugo v. ELA, *supra*, págs. 981-982. En este tipo de modalidad, la convicción de la persona imputada es, precisamente, el fundamento que origina la confiscación. Es decir, si la persona acusada resulta convicta se impone la confiscación como pena adicional. Evidentemente, esta modalidad de confiscación es de naturaleza punitiva y tiene el propósito de promover el interés del Estado de evitar que todo aquel que incurre en conducta criminal se lucre de su actividad delictiva. Del Toro Lugo v. ELA, *supra*, pág. 982.

De otra parte, en la modalidad civil de confiscación, la acción se presenta directamente en contra de la cosa a

ser confiscada, por lo que está separada procesalmente de la acción criminal instada en contra del presunto autor del delito. Coop. Seg. Mult. v. ELA, *supra*, pág. 664. Dicho de otro modo, este tipo de confiscación va dirigida en contra de la cosa misma (*in rem*) y no en contra del dueño de la propiedad, su poseedor, encargado o cualquier otra persona con interés legal sobre ésta. La confiscación civil es una acción *in rem* en la que se imputa la utilización de la propiedad confiscada en la comisión de un delito. Del Toro Lugo v. ELA, *supra*, pág. 982. Por ende, el derecho del Estado a tomar posesión de la cosa surge del mal uso que se le ha dado a ésta. Suárez v. ELA, 162 DPR 43, 52 (2004) (*Per Curiam*) (Regla 50); Del Toro Lugo v. ELA, *supra*, pág. 983.

Resulta importante señalar que la confiscación *in rem* se trata de una ficción jurídica a través de la cual, en cierto sentido, se culpa a la propia cosa por su participación en el delito. Por tanto, en esta modalidad se permite que el Estado vaya directamente en contra de la propiedad como parte de una ficción jurídica que considera que a la cosa, como medio o producto del delito, se le puede fijar responsabilidad independientemente del autor del delito. Coop. Seg. Mult. v. ELA, *supra*, pág. 665.

Ahora bien, en innumerables ocasiones, este Tribunal ha establecido que los elementos pertinentes para determinar si procede una confiscación civil son los siguientes: (1) existencia de prueba suficiente y

preponderante de que se ha cometido un delito; y (2) existencia de un nexo entre la comisión del delito y la propiedad confiscada. Doble Seis Sport v. Depto. Hacienda, *supra*, pág. 784; Suárez v. ELA, *supra*, pág. 52; Del Toro Lugo v. ELA, *supra*, pág. 983. De este modo, se ha precisado que la acción civil de confiscación procede si el *quantum* de prueba para establecer que se ha cometido un delito es suficiente y preponderante, **y si existe un nexo entre el delito perpetrado y la propiedad confiscada.**

### B.

De igual manera, debemos resaltar que la naturaleza *in personam* o *in rem* de una acción depende de lo que persiga el estatuto que la habilita. Ello, toda vez que no es la naturaleza de la acción, sino el verdadero propósito del estatuto, lo que debe guiar el análisis. Coop. Seg. Múlt. v. ELA, supra, pág. 664; Downs v. Porrata, Fiscal, 76 DPR 611, 619 (1954). Cónsono con lo anterior, desde hace varias décadas, este Tribunal ha sido enfático en que la confiscación civil tiene una **marcada naturaleza punitiva.** Coop. Seg. Múlt. v. ELA, supra, pág. 664; Centeno Rodríguez v. ELA, 170 DPR 907, 913 (2007); Santiago v. Supte. Policía de PR, 151 DPR 511, 515-516 (2000); Carlo v. Srio. de Justicia, 107 DPR 356, 362 (1978). Esto es, independientemente de la naturaleza civil de la acción de confiscación, su propósito punitivo ha quedado reflejado en la manera en que ha sido aplicada la sanción, el procedimiento utilizado y las defensas

permitidas en éste. Santiago v. Supte. Policía de PR, supra, pág. 515; Del Toro Lugo v. ELA, supra, págs. 986-987. Por tanto, no cabe duda que la naturaleza *in rem* de la acción no la desviste de su condición esencialmente punitiva y de infligir castigo. Carlo v. Srio. de Justicia, supra, pág. 362; Ochoteco v. Tribunal Superior, 88 DPR 517, 528 (1963). Ello, pues, es evidente que su objetivo es castigar por la comisión de una ofensa contra la ley. Carlo v. Srio. de Justicia, supra, pág. 362.

De forma similar, el Tribunal Supremo federal ha establecido que aunque la confiscación se denomine civil y se considere independiente a la causa penal, ésta no deja de constituir un proceso esencialmente punitivo con miras a penalizar al individuo que incurra en conducta delictiva. Véase Austin v. US, 509 US 602 (1993); Plymouth Sedan v. Pennsylvania, 380 US 693, 697 (1965). Particularmente, en Plymouth Sedan v. Pennsylvania, supra, pág. 697, el foro supremo federal expresó lo siguiente:

> [P]roceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offences committed by him, though they may be civil in form, **are in their nature criminal** . . . [and] though technically a civil proceeding, [it] is in substance and effect a criminal one . . . [S]uits for penalties and forfeitures incurred by the commission of offences against the law, are of this quasicriminal nature . . . . Íd. (énfasis suplido).

**III**

Sabido es que, a partir de la década del sesenta, el proceso de confiscaciones en Puerto Rico estuvo regulado por la *Ley uniforme de confiscación de vehículos, bestias y embarcaciones*, Ley Núm. 39 de 4 de junio de 1960, 34 LPRA ants. secs. 1721 y 1722. No obstante, en el 1988, se promulgó la *Ley uniforme de confiscaciones de 1988*, Ley Núm. 93 de 13 de julio de 1988 (Ley Núm. 93), 34 LPRA ant. sec. 1723 *et seq.*, como parte de un proceso para uniformar los procedimientos de confiscación contemplados en diversas leyes especiales.

En lo pertinente, la Ley Núm. 93 reconoció en su exposición de motivos que la confiscación de bienes operaba como elemento disuasivo para que una persona, ante el riesgo de perder su propiedad, limitara su actividad delictiva o se le dificultara su realización. Véase Ley Núm. 93-1988 (1988 Leyes de Puerto Rico 409). La intención de la Ley Núm. 93 era evitar que la propiedad confiscada pudiera volverse a utilizar para fines ilícitos y servir de castigo adicional para disuadir a los criminales. Centeno Rodríguez v. ELA, supra, pág. 913; Negrón v. Srio. de Justicia, 154 DPR 79, 86-87 (2001). Se pretendía desincentivar la conducta criminal con la imposición de un castigo adicional a la posible privación de la libertad tras un encausamiento penal. Coop. Seg. Múlt. v. ELA, supra, pág. 663.

Al examinar las disposiciones de la Ley Núm. 93, este Tribunal señaló que el procedimiento de confiscaciones contenido en ésta era de carácter civil o *in rem* y se consideraba independiente de la acción penal que la motivó. Sin embargo, en múltiples ocasiones, este Tribunal dejó claro que aunque el procedimiento de confiscaciones de la Ley Núm. 93 era *in rem*, **éste perseguía y reflejaba un propósito punitivo**. Por tanto, si bien el proceso mantenía su forma civil, su objetivo era uno marcadamente punitivo.

**A.**

En atención a la evidente naturaleza punitiva de los estatutos confiscatorios de propiedad privada, nuestro desarrollo jurisprudencial ha apuntado hacia una **interpretación restrictiva** de éstos. A esos efectos, este Tribunal ha sostenido que estos estatutos no deben interpretarse de manera que propicien la confiscación, ni mucho menos se debe recurrir a su letra estricta para sostenerla, cuando existe un lenguaje dudoso en la propia ley. Pueblo v. González Cortés, supra, pág. 168. De esta forma, los estatutos confiscatorios deben ser interpretados de tal suerte que resulten consistentes con la justicia y los dictados de la razón natural. Coop. Seg. Múlt. v. ELA, supra, pág. 668; Pueblo v. González Cortés, supra, pág. 168. Cabe puntualizar que esta norma de interpretación siempre ha sido aplicada por este Tribunal

a los estatutos confiscatorios promulgados en nuestra jurisdicción. Veamos.

En Downs v. Porrata, Fiscal, supra, este Tribunal resolvió que ante un indulto total, pleno e incondicional otorgado a un imputado de delito con relación a sus propiedades confiscadas, surge la obligación de devolverlas. Íd., pág. 617. Particularmente, razonó que:

> [A]l borrarse todo vestigio de culpabilidad de la persona, la propiedad confiscada se convierte automáticamente en una propiedad inocente (*innocent property*) que puede revertir a su dueño, puesto que es la culpa del dueño la que la convierte en un instrumento o medio ilícito para la comisión de un delito. Íd., pág. 619.

Por otro lado, en Carlo v. Srio. de Justicia, supra, este Tribunal atendió la situación de un imputado de delito que impugnó la confiscación de su propiedad, tras obtener una absolución en los méritos en el caso criminal. En ese sentido, concluyó lo siguiente:

> La absolución en los méritos adjudica con finalidad irrevisable el hecho central, tanto del caso criminal como el de confiscación, de que el vehículo no se utilizó para transportar mercancía ilícita. Daría lugar a una **anomalía** resolver bajo estas circunstancias que no habiéndose probado en el primer caso que el acusado utilizara el vehículo para transportar material relacionado con el juego, hubiese de enfrentarse todavía a la misma cuestión en la demanda de impugnación. Íd., pág. 363 (énfasis suplido).

Asimismo, este Tribunal advirtió que no podía disminuirse, ni mucho menos ignorarse, la consecuencia de una sentencia absolutoria recaída sobre el hecho medular de ambos procedimientos. Esto, habida cuenta que se anticipó que sostener la confiscación en esas

circunstancias conllevaría derrotar garantías de estirpe constitucional, tales como: colocar a la persona en riesgo de ser castigada dos veces por el mismo delito y vulnerar su derecho a un debido proceso de ley y a no tomar su propiedad sin mediar justa compensación. Íd., págs. 363-364.

Posteriormente, en Del Toro Lugo v. ELA, supra, este Tribunal amplió la norma pautada en Carlo v. Srio. de Justicia, supra. A esos efectos, concluyó que una sentencia final y firme que dicta no causa en vista preliminar constituye cosa juzgada en su modalidad de impedimento colateral por sentencia en el pleito de confiscación. Del Toro Lugo v. ELA, supra, pág. 993. Del mismo modo, se resolvió que una determinación final y firme con relación a la supresión de evidencia ilegalmente obtenida, realizada en el procedimiento penal que da base a la confiscación, también será cosa juzgada en su modalidad de impedimento colateral por sentencia en la acción *in rem*. Íd., pág. 997. A pesar que estas dos situaciones no constituyen una adjudicación en los méritos de la culpabilidad o inocencia del acusado, este Tribunal dictaminó que no procedía la confiscación en esas circunstancias, porque no existía el elemento esencial del nexo entre la propiedad confiscada y su utilización en la comisión de un delito.

Con posterioridad, este Tribunal resolvió el caso Suárez v. ELA, supra, en el cual determinó que la

desestimación de los cargos criminales por incumplimiento con los términos de juicio rápido constituía impedimento colateral por sentencia en la acción civil de confiscación. Si bien reconoció que el Estado tenía la facultad para volver a presentar acusaciones conforme a la Regla 67 de las de Procedimiento Criminal, 34 LPRA sec. 67, sostuvo que:

> [N]o debe penalizarse al propietario de la cosa ocupada con la exclusión de la doctrina de cosa juzgada en procesos de confiscación, cuando fue precisamente por falta de diligencia del Estado en el trámite del proceso criminal que se obtuvo un resultado favorable a dicho propietario. Se estaría beneficiando doblemente al Estado por su incumplimiento con los términos de juicio rápido: no sólo podría volver a presentar nuevas acusaciones o denuncias sino que también excluiría del proceso de confiscación la aplicación de la doctrina de cosa juzgada. Ello, a pesar de que el Estado mismo provocó la desestimación de los cargos criminales con la consecuencia de que además de sujetar al imputado al trajín de un segundo proceso criminal, tiene la ventaja de excluir un importante fundamento para impugnar la acción de confiscación. Suárez v. ELA, supra, pág. 64.

En armonía con lo anterior, en Ford Motor v. ELA, 174 DPR 735 (2008), este Tribunal concluyó que el archivo y sobreseimiento de una acusación criminal, producto del cumplimiento con un programa de desvío, constituye cosa juzgada en su modalidad de impedimento colateral por sentencia en la acción civil de confiscación. Ante una situación análoga, pero con la particularidad de que se trataba de un menor, en Díaz Morales v. Dpto. de Justicia, 174 DPR 956 (2008) (Per Curiam), este Tribunal resolvió que una vez se cumple cabalmente con las condiciones del

programa de desvío y se obtiene el archivo del caso criminal, la confiscación no puede subsistir. Íd., págs. 965-966.

Recientemente, en Coop. Seg. Múlt. v. ELA, supra, este Tribunal continuó con la tendencia jurisprudencial de no separar totalmente el proceso civil de confiscación del procedimiento criminal, y de no aplicar mecánica y absolutamente la ficción jurídica del proceso *in rem*. Dictaminó que, a pesar de la diferencia en el *quantum* de prueba que se requiere en el caso criminal en comparación con la acción *in rem*, si no prospera la causa criminal presentada en contra de la persona imputada es difícil continuar la confiscación en el área civil. Íd., pág. 674. Finalmente, determinó que la acción civil confiscatoria se extingue cuando el imputado de delito muere antes de que la convicción advenga final y firme. Asimismo, razonó que permitir "la confiscación de un bien sin que nadie sea convicto de delito, extend[ería] irrazonablemente la ficción jurídica en la que se funda la acción, al extremo de que una 'cosa', por sí misma, sería culpable de la comisión de un acto delictivo". Íd., pág. 681.

Del andamiaje jurisprudencial expuesto, se desprende que aunque este Tribunal ha reconocido y validado la independencia de la acción *in rem* con respecto a la acción *in personam*, ha sostenido el firme criterio de atar el pleito civil de confiscación al resultado de la causa criminal instada en contra del alegado autor del delito

que originó la confiscación. De ese modo, se ha reafirmado que ese vínculo resulta necesario aun cuando la absolución criminal no sea en los méritos. Así, se ha dejado claro que "no se trata únicamente de la aplicación de la doctrina de impedimento colateral por sentencia, sino de **excepciones a la independencia** del proceso *in rem* fundadas en la extinción de la acción penal contra la persona presuntamente responsable del delito". Íd., pág. 676 (énfasis suplido).

**B.**

De otro lado, cabe señalar que mientras se desarrollaba el marco jurisprudencial esbozado, la entonces Asamblea Legislativa de Puerto Rico aprobó la Ley Núm. 32-2000 (Ley Núm. 32). Mediante ésta, se enmendó el Art. 2 de la Ley Núm. 93 para, entre otras cosas, añadir un inciso (c), en el cual se **excluyó expresamente** la aplicación de la doctrina de impedimento colateral por sentencia en casos de confiscación. Específicamente, la enmienda dispuso que el resultado favorable para un imputado en cualquiera de las etapas de la acción criminal no sería impedimento ni tendría efecto de cosa juzgada en la acción civil de confiscación, aunque ésta se basara en los hechos imputados en la acción penal. Véase Ley Núm. 32-2000 (2000 (Parte 1) Leyes de Puerto Rico 373, 376).

No obstante, a tres años de la aprobación de la Ley Núm. 32, la Asamblea Legislativa de Puerto Rico promulgó la Ley Núm. 18-2003 (Ley Núm. 18), la cual derogó el

inciso (c) que se había añadido con la promulgación de la Ley Núm. 32. Destacamos que la Ley Núm. 18 expresamente reconoció que la exclusión de la aplicación de la doctrina de impedimento colateral por sentencia mediante la Ley Núm. 32 se llevó a cabo sin considerar lo resuelto por este Tribunal en Carlo v. Srio de Justicia, supra, y en Del Toro Lugo v. ELA, supra. Véase Ley Núm. 18-2003 (2003 (Parte 1) Leyes de Puerto Rico 64). De igual forma, en la Ley Núm. 18 se expuso que la enmienda introducida por la Ley Núm. 32:

> [V]ulnera[ba] el derecho del acusado a no ser juzgado dos veces por el mismo delito y el derecho a no ser privado de su propiedad sin el debido proceso de ley y previa justa compensación. Íd., pág. 64.

Más aún, se dispuso que el objetivo de la Ley Núm. 18 era corregir la situación causada por la enmienda al Art. 2 de la Ley Núm. 93, de modo que se ajustara al ordenamiento jurídico vigente y, sobre todo, al mandato constitucional. Íd., pág. 65. De esa manera, la entonces Asamblea Legislativa razonó que la exclusión de la mencionada doctrina suponía un menoscabo de los postulados constitucionales fundamentales en una democracia. Íd.

## IV

Expuesto el origen del marco estatutario actual, procede examinar las disposiciones de la Ley Núm. 119-2011, conocida como la *Ley uniforme de confiscaciones de 2011* (Ley Núm. 119), 34 LPRA sec. 1724 *et seq*. Este estatuto derogó la Ley Núm. 93 y, principalmente,

establece las normas que regirán el procedimiento a seguir en toda confiscación.[1] Particularmente, la Ley Núm. 119 instituye un trámite expedito y uniforme para la confiscación y disposición de bienes por parte del Estado.

En lo atinente al presente caso, la Ley Núm. 119 **reafirma** como política pública la naturaleza *in rem* de las confiscaciones. Sostiene que la confiscación es un proceso civil dirigido en contra de la cosa misma e independiente de cualquier otro proceso que se pueda llevar contra el dueño o el poseedor de los bienes ocupados. 34 LPRA sec. 1724e. Es decir, tal como lo ha reconocido este Tribunal, la ley dispone que la acción de confiscación será independiente de cualquier otra acción, ya sea penal, administrativa o de otra índole.

Asimismo, en lo que atañe al proceso de impugnación de la confiscación, el Artículo 15 dispone que "se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos". 34 LPRA sec. 1724*l*. En consecuencia, la ley establece que "[e]l demandante tiene el peso de la prueba para derrotar la legalidad de la confiscación". Íd. Además, se precisa que una vez se presente la contestación a la demanda el foro judicial celebrará una vista de

---

[1]Respecto a la propiedad sujeta a confiscación, el Artículo 9 de la Ley Núm. 119 otorga la facultad al Estado para ocupar y hacer suyos todos aquellos bienes utilizados en violación a estatutos confiscatorios contenidos tanto en nuestro Código Penal como en leyes especiales que autoricen la confiscación. 34 LPRA sec. 1724f.

legitimación activa. Ello, a los fines de determinar si antes de los hechos que motivaron la confiscación el demandante ejercía dominio y control con relación a la propiedad en cuestión. Íd. De no cumplirse el requisito de legitimación activa, el tribunal desestimará inmediatamente el pleito. Íd.

Ahora bien, resulta oportuno enfatizar que, cónsono con lo reseñado con relación a los estatutos confiscatorios, en la Ley Núm. 119 también se insiste en que la acción de confiscación constituye un **elemento disuasivo** a la actividad criminal. Ello, debido "al **temor que infunde** la pérdida de la propiedad". Véase Ley Núm. 119-2011 (2011 (Parte II) Leyes de Puerto Rico 1761) (énfasis suplido). No obstante, **a diferencia de la Ley Núm. 32, la Ley Núm. 119 no incluye una prohibición expresa en cuanto a la aplicación de la doctrina de impedimento colateral por sentencia en pleitos de impugnación de confiscación.** Por el contrario, se mantiene el análisis jurisprudencial desarrollado en cuanto al carácter independiente del proceso civil de confiscación y la acción penal. Lo anterior, claro está, tomando en consideración las excepciones aplicables a la independencia de estas acciones, por razón de la relación tan estrecha entre el pleito civil de confiscación y el procedimiento penal.

**V**

Como mencionamos, en este caso el señor Santini Casiano presentó una acción judicial en contra del Estado, mediante la cual impugnó la confiscación de un vehículo de motor registrado a su nombre. Particularmente, sostuvo que la confiscación debía dejarse sin efecto a la luz de la determinación de no causa probable para acusarle por el delito que originó la confiscación. Arguyó que el resultado favorable en la acción penal constituía un impedimento colateral por sentencia para continuar el pleito civil de confiscación. Por su parte, el Estado alegó que la confiscación civil es independiente al procedimiento penal, por lo cual el peticionario tenía el peso de la prueba para rebatir la presunción de legalidad y corrección de la confiscación con prueba distinta al resultado favorable en la acción penal.

Evaluados los planteamientos de ambas partes, el Tribunal de Primera Instancia declaró con lugar la demanda de impugnación de confiscación incoada por el señor Santini Casiano. Inconforme, el Estado recurrió al Tribunal de Apelaciones, el cual revocó la determinación del foro primario. Esencialmente, concluyó que la absolución o no implicación en los cargos imputados en la acción penal, no es suficiente por sí solo para aplicar automáticamente el impedimento colateral por sentencia y, por tanto, invalidar la confiscación. En disconformidad con tal

determinación, el señor Santini Casiano acude ante este Tribunal.

Como adelantamos, según se desprende del marco jurisprudencial y estatutario expuesto, se ha establecido reiteradamente que si bien el proceso de confiscación es de naturaleza civil en su forma, tiene un marcado propósito punitivo. Ello, toda vez que, conforme ha reconocido la Asamblea Legislativa, la confiscación opera como mecanismo para disuadir y penalizar al imputado de delito con la pérdida de su propiedad. Por tanto, no procede desvincular tajantemente la acción civil de confiscación del procedimiento penal. Adviértase que el proceso de confiscación civil requiere que se establezca una conexión entre la propiedad y la comisión del delito.

En vista de ello, resulta improcedente utilizar la ficción jurídica en que se funda la acción civil para llegar al absurdo de reconocerle una facultad al Estado para ejercer su poder punitivo sobre un individuo y despojarlo de su propiedad por la comisión de un delito, aunque éste no se haya cometido. Ello es así, pues en esas circunstancias se estaría confiscando propiedad privada sin que se haya utilizado en actividad criminal. Lo anterior, sin duda, vulneraría el derecho constitucional del individuo a que no se le prive de su propiedad privada sin justa compensación y menoscabaría la garantía fundamental al disfrute de su propiedad. Al amparo de las protecciones constitucionales aplicables y la normativa jurídica

esbozada, resolvemos que el resultado favorable obtenido en la acción penal incoada en contra del señor Santini Casiano constituyó un impedimento colateral por sentencia que impide continuar con el pleito civil de confiscación.

## VI

Por los fundamentos expuestos, revocamos la determinación del Tribunal de Apelaciones y se restablece el dictamen emitido por el Tribunal de Primera Instancia.

La Jueza Asociada señora Pabón Charneco hace constar la siguiente expresión:

> "La Jueza Asociada señora Pabón Charneco está conforme con la Sentencia que antecede por los fundamentos expresados en la Parte III y reitera aquellos expresados en su Opinión de Conformidad emitida en *Mapfre Preferred Risk Ins. Co., et al. v. ELA et al.*, 2017 TSPR 80, 198 DPR __ (2017)."

El Juez Asociado señor Estrella Martínez hace constar la siguiente expresión:

> "Estoy conforme con el dictamen contenido en la Sentencia por los fundamentos expuestos en mi Voto particular disidente emitido en *Bco. Bilbao Vizcaya et al. v. ELA et al.*, 194 DPR 116, 149-175 (2015)."

El Juez Asociado señor Rivera García disiente con opinión escrita, a la cual se unen el Juez Asociado señor Martínez Torres y el Juez Asociado señor Feliberti Cintrón. El Juez Asociado señor Kolthoff Caraballo no intervino.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis B. Santini Casiano

      Peticionario

           v.

Estado Libre Asociado de Puerto
Rico, Superintendente de la
   Policía de Puerto Rico,
       Secretario

      Recurridos

CC-2015-0941

**Opinión disidente emitida por el Juez Asociado señor Rivera García, a la cual se unieron los Jueces Asociados señores Martínez Torres y Feliberti Cintrón.**

En San Juan, Puerto Rico, a 4 de diciembre de 2017.

Una mayoría de este Tribunal, de nuevo, resuelve incorrectamente que procede vincular y atar el proceso de criminal contra una persona al proceso civil de impugnación de una confiscación. A la luz del texto claro de la Ley Uniforme de Confiscaciones de 2011, Ley Núm. 119-2011, según enmendada (34 LPRA secs. 1724-1724w), y un estudio exhaustivo de los motivos expuestos en el trámite de la creación y la adopción de la ley, lo acertado era desvincular ambos procesos. Indudablemente el carácter independiente, aclarado como aquel en el cual el proceso civil de confiscación no se ve afectado de modo alguno por el proceso criminal contra una persona, dispuesto tanto

en el texto de la ley como en la intención expresada por la Asamblea Legislativa, se distancia de la normativa establecida en las leyes derogadas y los pronunciamientos que hicimos antes de la aprobación de la Ley Uniforme de Confiscaciones de 2011. Hoy, al resolver como lo hace una mayoría de los miembros de esta Curia, se crea una relación de dependencia entre ambos procesos en la cual se condiciona la validez de la confiscación a la subsistencia y existencia del proceso criminal en contravención a la ley vigente. Como mencioné, luego de la promulgación de la Ley Uniforme de Confiscaciones de 2011, esa determinación no tiene cabida en nuestro ordenamiento jurídico. Como consecuencia, por los fundamentos que expongo a continuación, me es forzoso reiterar los pronunciamientos que he emitido al atender esta controversia y disentir del proceder mayoritario.[2]

En vista de que la sentencia que emite este Tribunal expone los hechos pertinentes a la controversia, me limitaré a esbozar el derecho aplicable y las razones que sustentan mi disenso; no así todo el trámite judicial ocurrido hasta que el caso llegó ante nuestra consideración. Veamos.

**I**

La confiscación es el acto mediante el cual el Estado, representado por el Poder Ejecutivo, priva a una persona de su propiedad sin compensación económica, basado únicamente en que esa propiedad fue utilizada en la comisión de ciertos delitos predeterminados por la Asamblea Legislativa o porque

---

[2] Véanse, e.g.: Banco Bilbao Vizcaya, *et al.* v. ELA, 195 DPR 39, 56 (2016) (Opinión disidente); Mapfre Praico Insurance Company, *et al.* v. ELA, 195 DPR 86, 90 (2016); Mapfre Preferred Risk Insurance Company, *et al.* v. ELA, 2017 TSPR 80, 198 DPR ___ (2017) (Opinión disidente).

tal bien es producto o resultado de una conducta prohibida por ley.[3] En ese esquema le corresponde exclusivamente al Poder Legislativo determinar bajo qué circunstancias, condiciones y procedimientos particulares el Estado está facultado para confiscar una propiedad involucrada en una actividad delictiva, conforme los parámetros constitucionales que aplican.[4] Al así hacerlo, puede instituir la facultad de confiscar del Estado como una confiscación de carácter criminal, conocida como "confiscación *in personam*"; o como confiscación civil, mejor conocida como "confiscación *in rem*".[5]

La confiscación *in personam* constituye una penalidad adicional contra una persona que ha sido convicta de delito. Bajo esta modalidad la confiscación es parte integral del proceso criminal y está subordinada ineludiblemente a que la persona sea declarada culpable del delito imputado.[6] Es decir, la eventual convicción de una persona es el fundamento que da base a la confiscación de la propiedad.[7]

Por otro lado, en la confiscación *in rem* se establece un proceso civil dirigido contra la cosa misma y no contra el dueño de la propiedad, poseedor, encargado o cualquier

---

[3] *Bco. Bilbao Vizcaya v. ELA*, *supra*, pág. 58; *Ford Motor v. ELA*, 174 DPR 735, 741 (2008); *Suárez v. ELA*, 162 DPR 43 (2004); *Del Toro Lugo v. ELA*, 136 DPR 973, 980-981 (1994).

[4] En el caso de Puerto Rico, el poder de confiscación del Estado está supeditado a las exigencias constitucionales incluidas en el Art. II, Sec. 7 de la Constitución de Puerto Rico, Art. II, Sec. 7, Const. PR, LPRA, Tomo I y la Enmienda Quinta y Catorceava de la Constitución de Estados Unidos, USCA Enmd. V y XIV, las cuales garantizan que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley.

[5] *Mapfre PRAICO*, *et al*. *v. ELA*, 188 DPR 517, 525 (2013); *Coop. Seg. Múlt. v. ELA*, 180 DPR 655, 664 (2011).

[6] *Bco. Bilbao Vizcaya v. ELA*, *supra*, pág. 59.

[7] Íd.

otra persona con algún interés legal sobre ésta.[8] En otras palabras, su enfoque no es si la persona incurrió en un delito, sino si la propiedad se utilizó en una actividad ilegal. Ante esa premisa, como regla general, quién utilizó la propiedad es impertinente. Así, contrario a la confiscación *in personam*, la confiscación *in rem* es una acción completamente separada e independiente del procedimiento criminal que se dilucide contra el presunto autor o autores del delito.[9] En ese sentido, su efecto es que la confiscación *in rem* podría prevalecer aun cuando el Estado no haya obtenido un resultado favorable en el proceso penal.

## II

Como es sabido, la doctrina de impedimento colateral por sentencia opera cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final, y la determinación de ese hecho es concluyente en un segundo pleito entre las mismas partes.[10] En otros términos, la aplicación de esta doctrina depende de que un hecho fundamental en el proceso actual haya sido expresamente dilucidado como elemento clave en un proceso anterior mediante una sentencia legítima y final entre idénticas partes.[11] Ello, según hemos reconocido,

---

[8] López v. Secretaria, 162 DPR 345, 352 (2004); Negrón v. Srio. de Justicia, 154 DPR 79, 87 (2001).

[9] Bco. Bilbao Vizcaya v. ELA, *supra*, pág. 60.

[10] Coop. Seg. Mult. v. ELA, *supra*, págs. 672-673; Suárez v. ELA, *supra,* pág. 59.

[11] Por *hecho necesario* o *elemento clave* nos referimos a que ese hecho que se pretende identificar en el segundo proceso como uno previamente adjudicado, haya sido necesario y fundamental en el

evita que tengan la necesidad de litigar nuevamente un hecho ya adjudicado entre ellas en un dictamen anterior.[12]

Desde Carlo v. Srio. de Justicia, 107 DPR 356 (1978), este Tribunal determinó que "[l]a doctrina de impedimento colateral por sentencia exige la desestimación del segundo proceso, aun cuando tenga por objeto un delito distinto, si al resolverse el caso anterior se adjudicaron y determinaron hechos necesariamente decisivos para el segundo".[13] Cónsono con lo anterior, en esa ocasión el Tribunal expresó lo siguiente:

> La decisión que hoy tomamos está **estrictamente ceñida** a la situación de derecho que se produce al concurrir circunstancias determinantes, a saber: que el acusado es dueño del vehículo confiscado; **que su absolución en los méritos inevitablemente comprende la adjudicación de la cuestión central de que no utilizó el vehículo para transportar material prohibido.**[14] (Énfasis suplido).

Aunque en ese caso se delimitó la aplicación de la doctrina de impedimento colateral por sentencia, posteriormente esta Curia comenzó a aplicar la doctrina a escenarios distintos. Esto tuvo el efecto directo de condicionar la confiscación civil a la existencia y el resultado del proceso penal contra alguna persona. Ello, sin que se realizara adjudicación alguna sobre el hecho central de que se utilizó o no la propiedad confiscada en la

---

razonamiento de la sentencia emitida por el Tribunal en el primer proceso. Sólo así, se podría establecer en estricto rigor jurídico, que ese hecho, en efecto, fue debidamente adjudicado mediante sentencia final y firme. Véanse Beníquez v. Vargas, 184 DPR 210, 225-226 (2012); Presidential v. Transcaribe, 186 DPR 263, 276-277 (2012).

[12] E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Vol. II, San Juan, Ed. Forum, 1992, págs. 376-385.

[13] Carlo v. Srio. de Justicia, 107 DPR 356, 363, (1978).

[14] Íd.

comisión de un delito.[15] En la jurisprudencia sucesiva a Carlo v. Srio. de Justicia, *supra*, este Foro le impregnó un carácter criminal a la confiscación civil al no avalarla sin que alguien hubiese sido convicto de delito. De hecho, a pesar de que se aludió a las distinciones típicas entre la confiscación civil y la confiscación criminal, esa discusión se limitó a una referencia automática, casi dogmática, como parte de un repaso doctrinal del proceso de confiscación y la cual nunca tuvo un impacto real en la adjudicación de las controversias que hasta la aprobación de la Ley Uniforme de Confiscaciones de 2011 habíamos atendido.[16] Así, incluso ausentes las características necesarias para aplicar la doctrina de impedimento colateral por sentencia y la clara distinción habida entre la confiscación *in rem* y la confiscación *in personam*, las decisiones de este Tribunal se encaminaron a vincular y hacer depender la validez de la confiscación al resultado del proceso criminal que se pudiera llevar a cabo por los mismos hechos contra alguna persona. Lo anterior hasta el punto de crear cierta confusión entre ambos tipos de confiscación.

Ahora bien, esa jurisprudencia surgió durante la vigencia de la Ley Uniforme de Confiscaciones de Vehículos,

---

[15] Véanse e.g.: Coop. Seg. Mult. v. ELA, *supra* (se invalidó la confiscación pues había muerto la persona que presuntamente utilizó el vehículo en un acto delictivo); Díaz Morales v. Dpto. de Justicia, 174 DPR 956 (2008) (se declaró ha lugar la demanda de impugnación de la confiscación luego de que un menor cumpliera con un contrato de desvío y obtuviera un archivo definitivo de la causa penal); Suarez v. ELA, *supra* (se determinó que aplicaba la doctrina de impedimento colateral por sentencia cuando los cargos criminales en un proceso penal se desestimaron por incumplimiento con los términos de juicio rápido); Del Toro Lugo v. ELA, *supra* (se invalidó la confiscación porque la determinación de no causa probable para acusar a una persona advino final y firme).

[16] Véanse Coop. Seg. Mult. v. ELA, *supra*, págs. 664-665; Del Toro Lugo v. ELA, *supra*, págs. 981-983.

Bestias y Embarcaciones, Ley Núm. 39 de 4 de julio de 1960 (34 LPRA secs. 1721 *et seq.*), y Ley Uniforme de Confiscaciones de Vehículos, Bestias y Embarcaciones (Ley Uniforme de Confiscaciones de 1988), Ley Núm. 93 de 13 de julio de 1988 (34 LPRA secs. 1723 *et seq.*), ambas derogadas. Fue bajo esas leyes ——y conforme la expresa intención legislativa de entonces de acoger nuestros pronunciamientos mediante las enmiendas que se incorporaron en aquel momento—— que este Tribunal reconoció varias excepciones que automáticamente anulaban el proceso civil de confiscación.

Particularmente, en el 2000 se aprobó la Ley Núm. 32-2000, que enmendó la Ley Uniforme de Confiscaciones de 1988, para disponer que el resultado de la acción penal no sería impedimento, ni tendría efecto de cosa juzgada sobre la acción civil de confiscación.[17] Tres años más tarde, esta enmienda fue derogada mediante la Ley Núm. 18-2003. Según la intención y el razonamiento de la Asamblea Legislativa consignada en la parte expositiva de la Ley Núm. 18-2003, era necesario ajustar el derecho positivo conforme a lo resuelto por este Tribunal en Carlo v. Srio. de Justicia, *supra*, y Del Toro Lugo v. ELA, *supra*.[18] Como consecuencia,

---

[17] Véase Art. 2(c) de la Ley Núm. 32-2000 (2000 (Parte 1) Leyes de Puerto Rico 376). El mencionado artículo establecía lo siguiente:

"[…] Naturaleza de la acción. – El resultado favorable al acusado o imputado en cualquier de las etapas de la acción criminal no será impedimento para, ni tendrá efecto de cosa juzgada sobre, la acción civil de confiscación, aunque ésta se base en los hechos imputados en la acción penal". Íd.

Véanse, además: Informe del P. de la C. 2621 de la Comisión de lo Jurídico de la Cámara de Representantes de 5 de noviembre de 1999, 13era Asamblea Legislativa, 6ta Sesión Ordinaria, y la Ponencia del Departamento de Justicia de 28 de septiembre de 1999 sobre el P. de la C. 2621.

[18] Véase Exposición de Motivos de la Ley Núm. 18-2003 (2003 (Parte 1) Leyes de Puerto Rico 64).

conforme lo que era la intención legislativa, previo a la aprobación de la nueva ley de confiscaciones, hubo un "decidido desarrollo de nuestra jurisprudencia hacia condicionar el proceso civil de confiscación al resultado de la causa criminal contra el alegado autor del delito".[19]

En la actualidad la situación es distinta. No podemos pasar por alto que ese proceder fue criticado expresamente por la Asamblea Legislativa al aprobar la Ley Uniforme de Confiscaciones de 2011. Además, el texto claro del estatuto, el historial legislativo y los motivos expuestos en la propia legislación reflejan un cambio de visión de la Legislatura en cuanto al vínculo que los tribunales debemos reconocer entre los distintos procesos y su intención de darle verdadero contenido a la "independencia" del proceso de confiscación respecto a otros procesos. Nos explicamos.

Entre las nuevas disposiciones incluidas en la Ley Uniforme de Confiscaciones de 2011, *supra*, y pertinentes a este caso, la Asamblea Legislativa expresamente dispuso el carácter independiente del procedimiento de confiscación con relación a cualquier otro proceso. Al respecto, el Art. 2 estableció como política pública "la naturaleza *in rem* de las confiscaciones, independiente de cualquier otra acción

---

[19] Coop. Seg. Mult. v. ELA, *supra*, pág. 676. Fue bajo la premisa de la entonces intención legislativa de condicionar ambos procesos, el civil y el criminal, que este Tribunal utilizó la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, para anular toda confiscación que estuviera acompañada de un dictamen favorable al imputado en el proceso penal. De ese modo, se avaló la disposición sumaria de las demandas de impugnación de confiscación sin una adjudicación en sus méritos, simplemente basados en los acontecimientos suscitados en la esfera penal. De esta forma, este Foro le brindó a la confiscación civil un tratamiento paralelo y fundamentado en las características esenciales de una confiscación criminal. Dicho tratamiento, a su vez, tuvo el efecto de igualar ambas modalidades de confiscación, a pesar de que la confiscación civil —o su respectiva impugnación— no se llevaba a cabo como parte del proceso criminal contra una persona. Bco. Bilbao Vizcaya v. ELA, *supra*, pág. 61.

de naturaleza penal, administrativa o de cualquier otra naturaleza".[20] Cónsono con esta política pública, el Poder Legislativo reiteró que "[e]l proceso de confiscación será uno civil dirigido contra los bienes e independiente de cualquier otro proceso de naturaleza penal, civil o administrativa que se pueda llevar contra el dueño o el poseedor de los bienes ocupados bajo las disposiciones de cualquier ley que autorice la confiscación de bienes por parte del Estado".[21]

Asimismo, el Art. 15 de la ley dispuso que "se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos".[22] En ese contexto, instituyó que "[e]l demandante tiene el peso de la prueba para derrotar la legalidad de la confiscación".[23] Podemos colegir, entonces, que conforme la nueva normativa establecida en la Ley Uniforme de Confiscaciones de 2011, el demandante —y no el Estado— deberá demostrar en la **acción de impugnación de la confiscación** que existe prueba suficiente y preponderante de que no se utilizó la propiedad confiscada en la comisión de algún acto ilegal o que no es producto de éste.[24]

---

[20] Art. 2 de la Ley Uniforme de Confiscaciones de 2011, *supra*. (34 LPRA sec. 1724).

[21] Art. 8 de la Ley Uniforme de Confiscaciones de 2011, *supra*. (34 LPRA sec. 1724e).

[22] Art. 15 de la Ley Uniforme de Confiscaciones de 2011, *supra*. (34 LPRA sec. 1724l).

[23] (Énfasis suplido). Íd.

[24] En todos los casos de confiscación resueltos por esta Curia se ha reiterado que los únicos elementos pertinentes a la determinación de si procede una *confiscación* civil son los siguientes: (1) si existe prueba suficiente y preponderante de que se ha cometido un delito y (2)

Incluso, en referencia a la derogada Ley Uniforme de Confiscaciones de 1988 y las respectivas interpretaciones formuladas por esta Curia, la Asamblea Legislativa expresó diáfanamente que "**[d]icha Ley ha[bía] sido objeto de múltiples enmiendas e interpretaciones judiciales que ha[bían] causado confusión en la implantación del estatuto**".[25] De esta manera se aprobó con una crítica expresa a la interpretación que habíamos hecho en casos previos a la ley. Así que para efectos de dispersar cualquier duda sobre su intención de instituir un proceso de confiscación *in rem* y verdaderamente independiente, incluyeron en la parte expositiva de la medida la siguiente aclaración que, por su importancia, citamos *in extenso*:

> En nuestra jurisdicción, la confiscación es una acción civil o *in rem*, distinta y separada de cualquier acción *in personam*. La confiscación que lleva a cabo el Estado se basa en la ficción legal de que la cosa es la ofensora primaria. **El procedimiento *in rem* tiene existencia independiente del procedimiento penal de naturaleza *in personam*, y no queda afectado en modo alguno por éste**. Los procedimientos de confiscación civil pueden llevarse a cabo y culminarse antes de que acuse, se declare culpable o se absuelva al acusado. Incluso, pueden llevarse aun cuando no se haya presentado ningún cargo. Esto debido a que la acción civil se dirige contra la cosa en sí misma, en general, **la culpabilidad o inocencia del propietario es irrelevante en cuanto a la procedencia o no de la confiscación civil**. Goldmith-Grant Co. v. United States, 254 U.S. 505 (1921). Calero-Toledo v. Pearson Yatch Leasing Co., 416 U.S. 663 (1974). United States v. One Assortment of 89 Firearms, 465 U.S. 354 (1984).[26] (Énfasis suplido).

---

si existe un nexo entre la comisión del delito y la propiedad confiscada. Véanse Suárez v. ELA, *supra*, pág. 52; Del Toro Lugo v. ELA, *supra*, pág. 983; Pueblo v. González Cortés, 95 DPR 164, 171 (1967).

[25] (Énfasis suplido). Exposición de Motivos de la Ley Uniforme de Confiscaciones de 2011, *supra*, pág. 1761.

[26] Exposición de Motivos de la Ley Uniforme de Confiscaciones de 2011, *supra*, págs. 1762-1763.

La intención consagrada en la parte expositiva de la ley es clara y no da margen a dudas. Nótese, además, que la referida exposición de motivos consigna la jurisprudencia sobre la que fundamenta su intención de instituir una confiscación estrictamente *in rem*. En ninguna parte menciona alguna de las decisiones que este Tribunal emitió durante la vigencia de las legislaciones derogadas. Por el contrario, es evidente que la Asamblea Legislativa resaltó su inconformidad con la interpretación que habíamos realizado de las leyes atinentes a las confiscaciones y aclaró el sentir y el significado de sus nuevas disposiciones. De esta manera, la política pública establecida en la Ley Uniforme de Confiscaciones de 2011 se distanció de las respectivas interpretaciones judiciales formuladas en el pasado, particularmente en lo que respecta a condicionar la acción civil de confiscación al resultado de algún proceso penal.

Cabe resaltar que en la ponencia presentada por el Departamento de Justicia sobre el Proyecto del Senado 897, eventual Ley Uniforme de Confiscaciones de 2011, éste expresó "preocupación por definir la naturaleza *in rem* o civil de la confiscación".[27] Indicó que "[a] efectos de evitar la más mínima confusión sobre los aspectos indicados, **[era] imprescindible introducir un lenguaje claro y preciso que establezca y mantenga distanciados** los procesos criminales *in personam* y la confiscación a través de todo el texto de la ley".[28] Precisamente, según hemos reiterado, eso fue lo

---

[27] Ponencia del Departamento de Justicia sobre el P. del S. 897 de 23 de julio de 2009, pág. 3.

[28] (Énfasis y subrayado suplido). Íd.

que hizo la Asamblea Legislativa en los Arts. 2, 8 y 15 de la Ley Uniforme de Confiscaciones de 2011.[29] Ante ello, no hay duda que en la legislación actual se estableció un proceso civil *in rem* verdaderamente independiente al proceso penal *in personam*, abandonando así la pasada intención legislativa de vincular ambos procesos.

## III

Resulta pertinente analizar si, en efecto, el proceso de confiscación confeccionado por el Poder Legislativo tiene un fin punitivo o criminal como se mencionaba en el pasado. De concluir que estamos ante un proceso de confiscación de carácter punitivo dirigido a castigar al presunto autor del

---

[29] Consistentemente, ésta ha sido la posición del Poder Ejecutivo sobre este particular. A modo ilustrativo, hallamos que en una medida legislativa anterior dirigida a establecer la Ley Uniforme de Confiscaciones de 2006, se incluyeron disposiciones idénticas a las incluidas en la Ley Uniforme de Confiscaciones de 2011 en cuanto a la independencia del proceso de confiscación de cualquier otro proceso penal. Véase, e.g., Art. 8 del P. de la C. 2696, 15ta Asamblea Legislativa, 3ra Sesión Ordinaria. A raíz de esta propuesta, el entonces Secretario de Justicia comentó lo siguiente:

> "Los términos de esta medida reconocen las diferencias existentes entre el proceso de confiscación *in rem* y cualquier acción criminal, o de otra índole, que pueda proceder de los mismos hechos. Se persigue que, por ejemplo, el Estado pueda proseguir legítimamente con una acción de confiscación contra una propiedad cuando existe prueba suficiente de que la misma ha sido utilizada en actividad delictiva, a[u]n cuando el Estado no pueda instar una acción criminal porque no se ha identificado con la certeza suficiente al autor del delito. Nótese que el Estado debe establecer la ocurrencia de una actividad delictiva y su relación con la propiedad confiscada.
>
> La propuesta legislativa permite atender el absurdo jurídico que impide que el Estado pueda confiscar, por ejemplo, un automóvil con cristales ahumados cuando existe evidencia en su interior, tales como casquillos de bala, que lo vinculan directamente a la comisión de un delito. Nótese que, en este tipo de caso, el Estado conoce la ocurrencia de una actividad delictiva y del uso del vehículo en su consecución. No obstante, no necesariamente se ha identificado al autor del delito, toda vez que los cristales ahumados impiden su identificación".

Ponencia del Departamento de Justicia de 24 de enero de 2006 sobre el P. de la C. 2696 ante la Comisión de lo Jurídico y Seguridad Pública de la Cámara de Representantes, pág. 4.

delito, el marco de acción de la Asamblea Legislativa para regular su aplicación y procedencia podría verse limitado por aspectos constitucionales aplicables bajo ciertas y limitadas circunstancias.

Sobre este particular, en United States v. Ward, 448 US 242 (1980), la Corte Suprema de los Estados Unidos elaboró un estándar de dos partes dirigido, precisamente, a contestar si un estatuto confiscatorio constituye en sí una medida punitiva de índole criminal o no. Al respecto, la Corte Suprema Federal expresó lo siguiente:

> Esta Corte a menudo ha reiterado que la interrogante sobre si una sanción es de índole civil o criminal es un asunto de interpretación estatutaria. Nuestra investigación en este respecto se ha realizado tradicionalmente en dos esferas. Primero, nos hemos dado a la tarea de determinar si el Congreso al establecer la sanción particular indicó expresa o implícitamente su preferencia por una etiqueta o la otra. Segundo, si el Congreso ha indicado la intención de establecer una sanción civil, hemos investigado más a fondo si el esquema estatutario era tan punitivo ya sea en su propósito o en su efecto como negar dicha intención. Respecto a esta última interrogante, hemos establecido que solo "la más clara evidencia" podría ser suficiente para establecer la inconstitucionalidad de una ley basado en dicho argumento.[30]

---

[30] United States v. Ward, 448 US 242, 248-249 (1980). En los propios términos de la Corte Suprema Federal, esta expresó específicamente lo siguiente:

> "This Court has often stated that the question whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction. Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. In regard to this latter inquiry, we have noted that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." (Citas omitidas) Íd.

En otros términos, la conclusión sobre si determinada sanción es verdaderamente de índole civil o penal debe estar precedida, en primer orden, en el análisis sobre si el Poder Legislativo consignó su intención, ya sea expresa o implícitamente, de caracterizar ésta como una civil o criminal. Es decir, este primer punto del análisis va dirigido específicamente a identificar la etiqueta "civil" o "criminal" que le dio o pretendió dar el Poder Legislativo a la sanción concerniente.[31] Si surge la intención del Poder Legislativo de caracterizar determinado procedimiento como civil, procede entonces abordar el segundo punto del examen dirigido a auscultar si ésta es tan punitiva en su propósito o efecto que transforma en una sanción criminal lo que se pretendió imponer como una sanción civil.[32] En esta segunda parte del análisis, es necesario que la parte que formule tal alegación presente **_la más clara evidencia_** de que lo que el Poder Legislativo denominó como civil en realidad constituye una sanción de índole criminal.[33] De no existir tal evidencia, lo único que procede es que el Tribunal confirme el carácter civil que le brindó o pretendió

---

[31] De concluir que el Poder Legislativo expresó su preferencia por una sanción criminal, resulta académico cualquier análisis posterior.

[32] Íd., pág. 249. ("We turn then to consider whether Congress, despite its manifest intention to establish a civil, remedial mechanism, nevertheless provided for sanctions so punitive as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.'").

[33] Íd. (Traducción nuestra) ("In regard to this latter inquiry, we have noted that 'only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground.'"); íd., pág. 251 ("Nor are we persuaded by any of respondent's other arguments that he has offered the 'clearest proof' that the penalty here in question is punitive in either purpose or effect."). Reiterado en United States v. One Assortment of 89 Firearms, 465 US 354, 366 (1984) ("Mulcahey has failed to establish by the 'clearest proof' that Congress has provided a sanction so punitive as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.'" [corchetes en el original]).

brindar, en primera instancia, el Poder Legislativo a la sanción concerniente.

La Corte Suprema de Estados Unidos reafirmó este análisis en United States v. Ursery, 518 US 267 (1996), caso en el cual confirmó su dictamen de United States v. One Assortment of 89 Firearms, 465 US 354 (1984), a los efectos de que un estatuto confiscatorio civil no viola la Quinta Enmienda de la Constitución Federal a aplicarse a un individuo que ha sido absuelto o condenado mediante sentencia, siempre y cuando éste no sea punitivo en su naturaleza.[34] Para sostener ese carácter civil de la confiscación, el Tribunal Supremo de Estados Unidos examinó los estatutos confiscatorios concernientes mediante el discutido análisis de dos partes. Respecto a la primera parte, la Corte sostuvo que era indudable que el Congreso tuvo la intención de establecer un proceso meramente civil.[35] Siendo así, pasó a la segunda parte del análisis y concluyó que existía "poca evidencia, y mucho menos la prueba más clara requerida" de que el proceso de confiscación establecido por el Congreso era tan punitivo en su naturaleza o efecto que lo convertía en una sanción criminal.[36]

Para alcanzar tal conclusión, en United States v. Ursery, *supra*, la Corte Suprema de Estados Unidos destacó varios puntos importantes y pertinentes a nuestra

---

[34] United States v. Ursery, 518 US 267, 292 (1996). ("We hold that these *in rem* civil forfeitures are neither "punishment" nor criminal for purposes of the Double Jeopardy Clause.").

[35] Íd., págs. 288-290.

[36] Íd., pág. 290.

legislación local. *Primero*, expresó el entendido de que las confiscaciones civiles *in rem* históricamente no constituyen un "castigo".[37] *Segundo*, resaltó que en los estatutos confiscatorios concernientes no se requería demostrar intención criminal en el uso de la cosa y aclaró que aun cuando éstos contienen una excepción de tercero inocente, ello de por sí no compele a la conclusión de que se desea castigar a una persona.[38] *Tercero*, señaló que si bien puede decirse que tales estatutos sirven un propósito disuasivo, la realidad es que tal objetivo es válido tanto para procesos de confiscación puramente civiles como para procesos criminales.[39] Finalmente, enfatizó que el solo hecho de que los estatutos confiscatorios estén atados o supeditados a una actividad criminal no es suficiente para establecer mediante "la más clara evidencia" que el proceso denominado como civil realmente es de carácter punitivo en su naturaleza o efecto.[40]

Al extrapolar tal análisis y escrutinio a nivel local con el objetivo de auscultar si el proceso de confiscación establecido en la Ley Uniforme de Confiscaciones de 2011 constituye una sanción meramente civil o penal, no podemos alcanzar otra conclusión que no sea que ésta es **puramente civil y remediativa**. Según indicáramos, no hay duda de que la Asamblea Legislativa aprobó la legislación vigente con la intención expresa de establecer un **proceso administrativo *in rem*** de estricto carácter civil e independiente de cualquier

---

[37] Íd., pág. 291.

[38] Íd., págs. 291-292.

[39] Íd., pág. 292.

[40] Íd.

otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza.

La realidad es que un simple repaso de la legislación evidencia la inexistencia de "la más clara evidencia" que nos lleve a concluir que, en efecto, estamos ante un estatuto de carácter punitivo. Nótese que la ley vigente no requiere demostrar que hubo intención criminal por parte de la persona que utilizó la cosa de forma ilícita para que proceda la confiscación. Como explicáramos, en el proceso civil estatuido únicamente se requiere demostrar la conexión entre la propiedad confiscada y su uso en una actividad prohibida por ley, independientemente de quién la utilizó o si tenía tal intención o no.

Además, aunque la legislación vigente podría permitir que se presente evidencia de la inocencia del dueño en ciertas circunstancias, esto, por sí solo, no es suficiente para atribuirle a la legislación un ánimo de castigar. La clara intención de la Asamblea Legislativa de disuadir la actividad criminal, según surge de la ley y de su historial, obligan a concluir que estamos ante una ley de naturaleza civil y remediativa. Como bien señalara la Corte Suprema de Estados Unidos, **tal elemento disuasivo de la actividad criminal no es en sí suficiente para categorizar un proceso civil de confiscación como de naturaleza criminal.**

IV

Dicho lo anterior, no podemos soslayar que cuando la ley es clara y libre de ambigüedad estamos mandados a

cumplir con su texto.[41] Esta norma se hace más patente cuando la intención articulada de la ley reitera lo expresado en sus propias disposiciones. En ese sentido, nuestra interpretación debe asegurar la efectividad de la intención legislativa a viva voz evidente.

Aunque anteriormente sí reconocimos la aplicación de la doctrina de impedimento colateral por sentencia en instancias en las cuales no se encontró causa probable en la vista preliminar y el Ministerio Público no acudió en alzada, ese dictamen se emitió enmarcado en las leyes derogadas y la acción legislativa que expresamente avaló nuestros pronunciamientos.[42] Es decir, al igual que otras decisiones relacionadas, se sustentó en lo que hasta entonces era la voluntad e intención de la Asamblea Legislativa.

No obstante, la aplicabilidad de la doctrina de impedimento colateral por sentencia en este caso debe estar supeditada a lo establecido en la Ley Uniforme de Confiscaciones de 2011 y a la intención que de ella se infiere. Esto, pues, no podemos actuar como una segunda Rama Legislativa que establezca una norma y una política pública distinta a la establecida expresamente en la ley.

Como mencionáramos, la Asamblea Legislativa, conociendo la interrelación que en el pasado este Tribunal estableció entre el proceso civil de confiscación y el proceso criminal contra una persona, específicamente consignó su voluntad de desligar, distanciar y distinguir ambas acciones. Esta

---

[41] Art. 14 del Código Civil de Puerto Rico (31 LPRA sec. 14).

[42] Véase <u>Del Toro Lugo v. ELA</u>, *supra*.

intención legislativa, según indicamos, surge tanto del historial legislativo de la Ley Uniforme de Confiscaciones de 2011, de los informes de las respectivas comisiones legislativas, de las ponencias presentadas, como de su texto claro. En otros términos, de una evaluación completa y cuidadosa del referido estatuto. Adviértase, incluso, que la ley aclaró en su parte expositiva que el procedimiento de confiscación *in rem* "no queda afectado en modo alguno" por el procedimiento criminal *in personam* o cualquier otro proceso. Así la Legislatura precisó, como lo hizo a través de varias disposiciones de la propia ley, que la validez de la confiscación no estaría supeditada al resultado de ningún proceso criminal.

Ante esas circunstancias, utilizar el resultado favorable obtenido por una persona en el proceso penal para aplicar la doctrina de impedimento colateral por sentencia en el proceso civil de impugnación de la confiscación va contra la voluntad legislativa diáfanamente expresada en la Ley Uniforme de Confiscaciones de 2011. Precisamente eso fue lo que quiso evitar el legislador al disponer sobre la independencia de los procedimientos y reiterar, una y otra vez, la naturaleza estrictamente *in rem* de la confiscación en nuestra jurisdicción.

Si bien es cierto que en la Ley Uniforme de Confiscaciones de 2011 no se incluyó una disposición sobre la doctrina de impedimento colateral por sentencia —tal y como se hizo constar en su momento mediante la derogada Ley Núm. 32-2000— la realidad es que aplicar esa doctrina de

manera automática bajo la nueva ley de confiscaciones sería completa y absolutamente incompatible con varias de las disposiciones que sí fueron incluidas en el estatuto. Ello conllevaría que asumamos que la Asamblea Legislativa incluyó en la Ley Uniforme de Confiscaciones de 2011 disposiciones inútiles y sin valor jurídico, puesto que, a pesar de que establece la independencia entre los procesos, la realidad es que esa independencia no existiría. En su lugar, partiríamos de la premisa de que el proceso civil de confiscación depende y está condicionado a otro proceso de naturaleza penal contra alguna persona. Resultaría un contrasentido expresar por un lado que los procesos son independientes, pero, por el otro, interrelacionarlos de tal manera que lo que ocurra en uno predetermine el desenlace del otro. Esa premisa sería contraria a la norma reiterada por nosotros de que a nuestras leyes no se les incorporan ni se les hace enmiendas y cambios superfluos.[43]

La Asamblea Legislativa fue clara y categórica en cuanto al propósito de establecer como política pública una separación e independencia, es decir, no condicionada, entre el proceso civil de confiscación y la causa penal que podría producirse a consecuencia de los mismos hechos. Estamos llamados a reafirmar ese ejercicio legítimo de establecer su política pública mediante la Ley Uniforme de Confiscaciones de 2011.[44]

---

[43] Santiago Meléndez v. Superintendente de la Policía, 151 DPR 511, 517 (2000), citando a García v. Tribunal Superior, 91 DPR 153 (1964).

[44] Los tribunales no podemos utilizar nuestra función interpretativa para distanciarnos e invalidar el contenido expreso y claro de una ley bajo el pretexto de que el legislador no incluyó determinado lenguaje. Nuestro deber no es juzgar cómo el legislador

Además, la realidad es que, más allá de ese ejercicio válido de establecer la política pública, esa independencia entre el proceso civil de confiscación y la acción penal tiene perfecta lógica y congruencia jurídica.[45] Se trata de dos acciones judiciales que ——si bien surgen de un mismo conjunto de hechos—— responden a fines y cuestionamientos distintos. En tales circunstancias, es jurídicamente sostenible no condicionar la acción civil de confiscación a lo que acontezca en la acción penal.

Validar la aplicación de la doctrina de impedimento colateral por sentencia, la aplicación de cualquier otra doctrina de índole estatutaria o continuar en el reconocimiento de presuntas excepciones a la independencia que debe caracterizar el proceso *in rem* de confiscación, que expresamente reconoció la Asamblea Legislativa y a la cual quiso brindarle contenido, **constituiría un ejercicio impropio de legislación judicial**. Ello en la medida que ignoraríamos y menoscabaríamos las disposiciones que sí fueron incluidas en la Ley Uniforme de Confiscaciones de 2011.

V

En este caso el único fundamento que el peticionario señaló para que se declarara ilegal e incorrecta la

---

debió expresar su intención legislativa, sino auscultar si determinada interpretación y resultado es compatible con la voluntad del legislador reflejada en el trámite, discusión y el propio texto de la ley.

[45] Así ha sido reconocido, incluso, por el Tribunal Supremo de Estados Unidos en multiplicidad de casos aún vigentes. Véanse, e.g.: Bennis v. Michigan, 516 US 442, 452 (1996); United States v. One Assortment of 89 Firearms, *supra*; Calero-Toledo v. Pearson Yatch Leasing Co., 416 US 663 (1974); Goldmith-Grant Co. v. Unites States, 254 US 505 (1921).

confiscación realizada fue el resultado favorable que recibió en un proceso penal. Esto porque, según alegó, el foro de instancia no encontró causa probable para someterlo a los rigores de un juicio.

Sin embargo, sabido es que la determinación de no causa en vista preliminar puede ser el resultado de un sinnúmero de razones ajenas a esa circunstancia (e.g. a que no se conectó al imputado con el delito).[46] Por esa razón, esa determinación no constituye la adjudicación del hecho central en el proceso civil de confiscación de que el vehículo no fue utilizado en la comisión de un delito. Más aún, cuando ni siquiera la Jueza realizó alguna observación que conlleve la determinación de que la propiedad no fue utilizada en la comisión de una actividad o acto ilegal.[47]

En ese sentido, era forzoso concluir que no se podía disponer de la acción civil de impugnación de la confiscación basado exclusivamente en el resultado obtenido por algún imputado a nivel penal; menos aún cuando esa determinación se produce como consecuencia de un fundamento ajeno a los méritos del caso penal en sí y, en el foro penal, no se realiza ninguna determinación que permita rebatir la legalidad de la confiscación. Así, como bien señaló el foro apelativo, si bien la presunción de legalidad

---

[46] En la denuncia contra el peticionario se hizo la imputación siguiente: "El referido acusado, **LUIS BRYAN SANTINI CASIANO**, allá en o para el día 23 de julio de 2013, en AIBONITO, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de Aibonito, ilegal, maliciosa, voluntaria y criminalmente, ACTUANDO EN CONCIERTO Y COMÚN ACUERDO CON **HECTOR L. MATOS CAMACHO**, a sabiendas, sin ser la persona autorizada por ley para ello, ESTE POSEÍA LA SUSTANCIA CONTROLADA CONOCIDA POR MARIHUANA". (Énfasis suplido). *Denuncia*, Apéndice de la Petición de *Certiorari*, pág. 62.

[47] Véase *Resolución*, Apéndice de la Petición de *Certiorari*, pág. 63.

y corrección de la confiscación es controvertible, en ausencia de algún otro planteamiento procedente en derecho, el Tribunal de Primera Instancia debía dilucidar la demanda civil de impugnación de la confiscación en sus méritos. Ello, conforme al proceso delineado por la Asamblea Legislativa en la legislación vigente.

En conclusión, la determinación de "no hubo causa probable" en vista preliminar, sin más, no es suficiente para declarar ha lugar una demanda de impugnación de una confiscación. Si la parte demandante interesa obtener un dictamen sumario, debe ubicar en posición al tribunal sobre su procedencia, pero su petitorio no puede basarse únicamente en la obtención de un dictamen favorable en la causa criminal.

Sin embargo, la decisión que toma este Tribunal tiene el efecto de anular toda confiscación, automáticamente y sin mayor consideración, fundamentándose exclusivamente en la determinación favorable obtenida a nivel penal. Ello, aun cuando ésta se debió a planteamientos ajenos a la legalidad y corrección de la confiscación que tampoco se traducen en que la propiedad confiscada no fue utilizada en una actividad ilegal. Conforme la normativa que detalladamente he evaluado y examinado a través de esta Opinión disidente, hubiera confirmado el dictamen del Tribunal de Apelaciones y validado la intención de la Asamblea Legislativa de establecer verdaderamente la independencia y separabilidad que caracteriza el proceso civil de confiscación *in rem.* Como una mayoría de este Tribunal llega a una conclusión contraria e insiste en atar y condicionar inexorablemente el

proceso criminal que se lleva contra una persona con el proceso civil de impugnación de una confiscación *in rem*, solo me resta disentir enérgicamente.


Edgardo Rivera García
Juez Asociado